IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| PATRIOT NATIONAL, INC., *et al.,* | |
| Debtors; | Case No. 18-10189 (KG) |
| | (Jointly Administered) |
| CWIBENEFITS, INC. and PATRIOT SERVICES, LLC, | |
| Plaintiffs, | Adv. Proc. No. 18-50415 (KG) |
| v. | |
| PAUL VAN CLEAVE and IMA, INC., | |
| Defendants | |

## MEMORANDUM IN SUPPORT OF MOTION FOR DISMISSAL BY DEFENDANTS, IMA, INC. AND PAUL VAN CLEAVE, PURSUANT TO FED. R. CIV. P. 12(b)(6), AS PER FEDERAL RULE OF BANKRUPTCY PROCEDURE 7012(b)

Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP**

BY:    */s/ Jennifer R. Hoover*
       Jennifer R. Hoover (DE Bar No. 5111)
       222 Delaware Avenue, Suite 801
       Wilmington, Delaware 19801
       Telephone: (302) 442-7010
       Facsimile: (302) 442-7012
       *E-Mail: jhoover@beneschlaw.com*

**GOLD, WEEMS, BRUSER, SUES &**
    **RUNDELL**

BY:    */s/ Steven M. Oxenhandler*
        Steven M. Oxenhandler, T.A. (Bar Roll #28405)
        Bradley L. Drell (Bar Roll #24357)
        Michael J. O'Shee (Bar Roll #10268)
        Martha R. Crenshaw (Bar Roll #27420)
        P.O. Box 6118
        Alexandria, Louisiana 71307-6118
        Telephone: 318-445-6471
        Facsimile: 318-445-6476
        *E-Mail:* soxenhandler@goldweems.com
        *E-Mail:* bdrell@goldweems.com
        *E-Mail:* moshee@goldweems.com
        *E-Mail:* mcrenshaw@goldweems.com
**ATTORNEYS FOR  IMA, INC. AND PAUL VAN**
**CLEAVE**

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.    Underlying Bankruptcy Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.    Adversary Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.    Dismissal of the Stay Violation and Turnover Claims. . . . . . . . . . . . 2

     B.    Dismissal of CWI Breach of Contract Claim Against Van Cleave
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     C.    Dismissal of CWI Tortious Interference With Contract Claim
        Against IMA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     D.    Dismissal of CWI Claim for Misappropriation of Trade Secrets
        in Violation of Florida Uniform Trade Secrets Act. . . . . . . . . . . . . . 4

     E.    Dismissal of All Claims Asserted by Patriot. . . . . . . . . . . . . . . . . . . 5

III.   STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.    Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.    General Fact Allegations Pertinent to Defendants' Motion. . . . . . . . . 7

     C.    Allegations Regarding the "Confidentiality and
        Non-Compete Agreement". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.   LAW AND ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.    Motion to Dismiss Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        (1)     Rule 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        (2)     Rule 12(b)(6) [Made Applicable as per Bankruptcy Rule
              7012(b)]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   B.     Plaintiffs' Claims For Stay Violations and Turnover
        Should Be Dismissed.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   C.     CWI's "Breach of Contract Claim" Against Van Cleave
        Should be Dismissed... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        (1)     CWI's allegations show no breach of the contract in
              dispute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

   D.     CWI's "Tortious Interference With Contract" Claim Against IMA
        Should be Dismissed... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        (1)     CWI's allegations show no interference with the subject
              matter of the Agreement.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

   E.     CWI'S "Florida Uniform Trade Secrets Act" Claim Should be
        Dismissed.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

   F.     All Claims of Patriot Should be Dismissed. . . . . . . . . . . . . . . . . . . . 23

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

*Ashchroft v. Iqbal,* 556 U.S. 662, 678 129 S.Ct. 1937,
    173 L.Ed.2d 868 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17, 18, 24

*Bank of Utah v. Teterboro R.A.M.S., LLC* , No. 14 -cv- 00060,
    2014 WL 2434201 (D.N.J., May 29, 2014). . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Bell Atl. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955,
    167 L.Ed.2d 929 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17, 20, 24

*Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.),*
    2008 WL 4239120, at *4 (Bankr.D.Del. 2008). . . . . . . . . . . . . . . . . . . . . . 20

*Burns v. Rozen,* 201 So.2d 629, 630 (Fla. 1st DCA 1967). . . . . . . . . . . . . . . . . . . . 22

*Comprehensive Care Corp. v. Katzman,* No. 8:09 -cv- 01375-T-24-TBM,
    2010 WL 3190136, *8 (M.D. Fla. July 30, 2010). . . . . . . . . . . . . . . . . . . 16, 17

*Conley v. Gibson,* 335 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). . . . . . . . . . . 10

*Crabtree v. Aetna Cas. And Surety Co.,* 438 So.2d 102, 105 (Fla. 1st DCA 1983). . . 16

*Howard v. Kerzner International Limited,* No. 12-2218,
    2014 WL 714787 (S.C. Fla. Feb. 24, 2014). . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Amcad Holdings, LLC,* 579  B.R. 33, 37 (Bankr. D.Del. 2017). . . . . . . . . . 10, 11

*In re Amcast Indus. Corp.*, 365 B.R. 91, (Bankr. S.D. Ohio 2007). . . . . . . . . . . . . . 15

*In re Bailey*, 380 B.R. 486 (B.A.P. 6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Bolton*, 466 B.R. 831, 67 (Bankr. S.D. Miss. 2012). . . . . . . . . . . . . . . . . . . . . 15

*In re Builders Transport, Inc.*, 471 F.3d 1178 (11th Cir. 2006). . . . . . . . . . . . . . . . 15

*In re Davis*, 498 B.R. 64, 67-69 (Bkrtcy. D. S.C. 2013). . . . . . . . . . . . . . . . . . . . . . 13

*In re Diagnostic Intern., Inc.*, 257 B.R. 511, 515 (Bkrtcy. D. Ariz. 2000). . . . . . . . . 15

iii

*In re Fortner Oilfield Services, Inc.*, 49 B.R. 9, 11 (Bankr. N.D. Tex. 1984). . . . . . . 14

*In re General Media, Inc.*, 335 B.R. 66 (Bkrtcy S.D.N.Y. 2005). . . . . . . . . . . . . . . 11

*In re Kline*, 424 B.R. 516 (Bkrtcy. D. N.M. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Nardulli & Sons Co., Inc.*, 66 B.R. 871, 875-76 (Bankr. W.D. Penn. 1986). . . 14

*In re Petrowax P.A.,Inc.* 200 B.R. 538 (Bkrtcy. D. Del. 1996). . . . . . . . . . . . . . . . . 11

*In re Reisher*, 149 B.R. 372, 373 (Bankr. M.D. Penn. 1992). . . . . . . . . . . . . . . . . . 14

*In re Resorts International, Inc.*, 372 F. 3d 154, 156; 165 (3d Cir. 2004). . . . . . . . . 14

*In re Uni-Marts, LLC,* 404 B.R. 767, 787 (Bankr.D.Del. 2009). . . . . . . . . . . . . . . . 20

*In re Wagers*, 340 B.R. 391 (Bankr. D. Kan. 2006),
    *rev'd on other grounds*, 355 B.R. 268 (B.A.P. 10th Cir. 2006). . . . . . . . . . . . 15

*In re Western Integrated Networks*, 329 B.R. 334, 340-341
    (Bkrtcy. D. Colo. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kelly v. Balboa Insurance  Company,* No. 8:11-cv- 450-T-35-MAP,
    2014 WL 12621241 (M.D. Fla. March 31, 2014). . . . . . . . . . . . . . . . . . . . . . 16

*Southeastern Fisheries Ass'n, Inc. v. Dep't of Natural Res.,*
    435 So.2d 1351, 1355 (Fla. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Berdeal,* 595 F.Supp.2d 1326, 1329-30 (S.D. Fla. 2009). . . . . . . . 22

**FEDERAL STATUTES**

11 U.S.C. §362. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

11 U.S.C. §362(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. §362(c)(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. §362(d)(e)(f) and (h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. §363. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. §522.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. §542.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

11 U.S.C. §542(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

11 U.S.C. §1141.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. §1141(d)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL RULES**

Fed. R. Civ. P. 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed R. Civ. P. 12(b)(6).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

F.R.B.P. 7012.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

F.R.B.P. 7012(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**OTHER AUTHORITIES**

Florida Statutes §§688.001- 688-009.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Florida Statute §672.313. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I.  PROCEDURAL HISTORY

### A.  Underlying Bankruptcy Case

Debtor, Patriot National, Inc., filed a Chapter 11 Voluntary Petition (Doc. #1) on January 30, 2018. Patriot National, Inc. also filed *Debtor's Joint Chapter 11 Plan of Reorganization* (Doc. #15) on January 30, 2018. Patriot National, Inc. filed *Debtor's Amended Joint Chapter 11 Plan of Reorganization* (Doc. #333) on Mach 9, 2018, and filed *Debtor's Second Amended Joint Chapter 11 Plan of Reorganization* (Doc. #374) on March 13, 2018. Patriot National, Inc. filed *Debtor's Second Amended Joint Chapter 11 Plan of Reorganization* (Solicitation Version) (Doc. #384) on March 14, 2018, and filed *Debtor's Third Amended Joint Chapter 11 Plan of Reorganization* (Doc. #471) on March 30, 2018. Patriot National, Inc. filed *Debtor's Fourth Amended Joint Chapter 11 Plan of Reorganization* (Doc. #632) on April 20, 2018, and filed *Debtor's Fourth Further Amended Joint Chapter 11 Plan of Reorganization* (Doc. #702) on May 3, 2018. The Confirmation Order (Doc. #706) was issued on May 4, 2018.

### B.  Adversary Case

CWIBenefits, Inc. ("CWI") and Patriot Services, LLC *f/k/a* Patriot Services, Inc. ("Patriot") filed a Complaint against Paul Van Cleave ("Van Cleave") and IMA, Inc. ("IMA"), *Complaint for Injunctive and Other Relief*, on April 27, 2018. (Doc. 1). The Complaint alleges Van Cleave breached a non-solicitation/non-competition agreement and misappropriated trade secrets and other confidential and proprietary information and that IMA aided and abetted Van Cleave in the alleged wrongdoing. The Complaint seeks

1

injective relief, forfeiture of compensation, actual damages, punitive damages, and any other form of relief deemed proper. Summons and Notice of Pretrial Conference in an Adversary Proceeding and Notice of Dispute Resolution Alternatives were issued on April 27, 2018.

II.    **SUMMARY OF THE ARGUMENT**

    A.    **Dismissal of the Stay Violation and Turnover Claims**

        1.    The Complaint does not plead defendants had notice of plaintiffs' Bankruptcy Cases for purposes of a willful violation of the automatic stay that would allow an award of damages.

        2.    Confirmation of plaintiffs' Chapter 11 Plan terminated the automatic stay and this Court's powers under 11 U.S.C. §542 as the property at issue in the Complaint vested in the Reorganized Debtors; thus actions for injunction and turnover to protect non-existent property of the estate should be dismissed.

    B.    **Dismissal of CWI Breach of Contract Claim Against Van Cleave**

        1.    CWI is not a named contracting party, and at most would be a third-party beneficiary of the Agreement at issue.

        2.    CWI stands in the shoes of the contracting parties, and cannot assert greater rights than those provided to the contracting parties.

        3.    The Agreement at issue provides protection only for plaintiff Patriot Services, LLC's "Business" of "*selling, marketing, and*

*underwriting workers' compensation insurance products*," and not for plaintiff CWI's business of providing "*third party administrator services ... including benefits administration, data management ... billing services to employers, health plans ... benefits administrators ... collecting premiums and remitting payments for insurance products*."

4.  Plaintiffs' Complaint does not allege any breach of any obligation related to the actual subject of the Agreement, *i.e.*, protections provided for "selling, marketing, and underwriting workers' compensation insurance products," and therefore CWI has failed to state a claim upon which relief can be granted for Breach of Contract.

C.  **Dismissal of CWI Tortious Interference With Contract Claim Against IMA:**

1.  The Agreement at issue provides protections only for plaintiff Patriot Services, LLC's "Business" of "*selling, marketing, and underwriting workers' compensation insurance products*."

2.  The Agreement at issue does not provide protections for plaintiff CWI's business of providing *third party administrator services*.

3.  Plaintiff's Complaint does not contain any allegations showing defendant IMA interfered in any manner with the subject matter

3

of the Agreement, *i.e.*, the providing of protections for "selling, marketing, and underwriting workers' compensation insurance products," and therefore CWI has failed to state a claim upon which relief can be granted for Tortious Interference With Contract.

4.  Further, CWI's allegations are conclusory and devoid of any facts to support the "interference with contract" claim; its allegations do not meet pleading requirements of law, and CWI has therefore failed to state a claim upon which relief can be granted.

**D.  Dismissal of CWI Claim for Misappropriation of Trade Secrets in Violation of Florida Uniform Trade Secrets Act:**

1.  The Florida Uniform Trade Secrets Act provides an independent statutory claim, <u>not</u> a contract claim.

2.  Plaintiffs' Complaint does not allege that any tortious acts occurred in Florida; the Complaint does not show CWI, IMA or Van Cleave have  any contacts with the State of Florida; the Complaint shows no relationship whatsoever between CWI and the State of Florida, such that the Florida Uniform Trade Secrets Act can be asserted as a claim in this proceeding.

3.  The Florida Uniform Trade Secrets Act cannot be applied extraterritorially unless the statute contains an express intention

4

that its provisions are to be given extraterritorial effect, and such an intent cannot be inferred.

4.    The Florida Uniform Trace Secrets Act contains no express intention that its provisions are to be given extraterritorial effect, and no "conflict of law" considerations allow application of the Act in this litigation. Accordingly, CWI has failed to state any claim upon which relief can be granted under the Florida Uniform Trade Secrets Act.

**E.    Dismissal of All Claims Asserted by Patriot:**

1.    Plaintiffs' Complaint alleges *only and exclusively* facts relating to CWI's business, CWI's purported contract and other rights, CWI's trade secrets, CWI's confidential information, CWI's customers, and CWI's competition with IMA.

2.    Plaintiff's Complaint does not allege <u>facts</u> showing any harm to Patriot, or to Patriot's business, or the misappropriation of Patriot's trade secrets, or the misappropriation of Patriot's confidential information, or defendants' improper competition with Patriot, or defendant's improper solicitation of Patriot's customers, or any acts whatsoever by defendants causing any harm to Patriot on any basis.

3.    Because plaintiffs' Complaint alleges <u>facts</u> relating <u>only</u> to

5

purported acts against  – and purported harm to – CWI, the
Complaint alleges no claims upon which relief can be granted on
any basis, and all claims of Patriot should therefore be dismissed.

## III.   STATEMENT OF FACTS

### A.   Background

Plaintiffs, CWIBenefits, Inc. ("CWI") and Patriot Services, LLC *f/k/a* Patriot
Services, Inc. ("Patriot"), bring thirteen (13) claims against its former employee, Paul
Van Cleave ("Van Cleave"), and his new employer, IMA, Inc. ("IMA"). Following
CWI's recent acquisition by a new corporate owner (in July 2015), Van Cleave left CWI
against the  backdrop of its tumultuous hirings and firings of Chief Executive Officers,
failing provider services, and wholly untenable employment conditions. IMA, a
successful, professionally managed, and dependable third party administrative services
company, became Van Cleave's new home. CWI's failings and continuing decline  led
to more than Van Cleave's departure; individual entities whose third party administrative
needs were not being met by CWI also sought refuge elsewhere. The representative
organization for  these entities, Benefits in a Card ("BIC"),  embarked on a nationwide
search for a third party administrator, and ultimately chose IMA, which had no prior
knowledge of BIC. Now, in refusing to acknowledge its own failures as the cause of its
plight, CWI joins  an  affiliate company to cast aspersions, enjoin  and seek damages
from defendants, as the purported villains in plaintiffs' imagined narrative.  More
specifically,  plaintiffs' seek a declaration that defendants have willfully violated the

6

automatic stay entered in this case, and request an injunction to prohibit further alleged violations of the stay.  (Doc. 1, ¶¶ 44-47; Prayer for Relief, ¶¶ (a) and (b)). Plaintiffs also seek an order compelling defendants' to turnover or account for property of plaintiffs. (*Id.,* ¶¶ 48-51; Prayer for Relief, ¶ ( c)). Plaintiffs aver additional improper acts of defendants (*Id.,* ¶¶ 52-135) for which they seek damages and additional injunctive relief to prohibit further alleged injurious acts by defendants. (*Id.,* Prayer for Relief, ¶¶ (d) - (j)).

### B.    General Fact Allegations Pertinent to Defendants' Motion

Plaintiffs' claims are  based primarily on the following referenced assertions.  As stated in the Complaint, Van Cleave formerly worked for CWI (Doc. 1, ¶¶ 15-19, 22-24), and was  purportedly  made aware of CWI's confidential information and trade secrets. (*Id.,* ¶¶ 22-23).  Upon leaving CWI's employment, Van Cleave is alleged to have taken CWI's proprietary information, solicted CWI's customers, and thereafter  used CWI's confidential information/trade secrets in his subsequent employment with IMA. (*Id.,* ¶¶ 34-38; 40-43). According to the Complaint, CWI "was founded ... *to provide third party administrator services*, including benefits administration, data management, and billing services to employers, health plans, and benefits administrators." (*Id.,* ¶ 11, emphasis added). CWI further describes its business as performing, "[o]n behalf of its customers ... essential administrative services including collecting premiums and remitting payments for insurance products." (*Id.*, emphasis added ). CWI further alleges, "IMA, like CWI, is *a provider of third party administrator services*," and that "IMA is a direct

7

competitor of CWI." (*Id.,* ¶ 39, emphasis added).

The business of Patriot is not stated in the body of the Complaint, although plaintiff's attached <u>Exhibit A</u> ("Confidentiality and Non-Compete Agreement") specifically describes Patriot's "Business" as the "*highly competitive business of selling, marketing, and underwriting workers' compensation insurance products on a nationwide basis (collectively 'Business')*." (Doc. 1, Ex. A, p.1, second paragraph, emphasis added). The Complaint <u>does not</u> allege Patriot is *a provider of third party administrator services* (like CWI); the Complaint <u>does not</u> allege IMA is a competitor of Patriot; the Complaint <u>does not</u> allege Van Cleave worked for Patriot.  The Complaint  <u>does not</u> <u>allege Van</u> *Cleave was engaged in the   selling, marketing and underwriting of workers' compensation insurance products*.  The Complaint does not allege Patriot and CWI are <u>the same entity</u>, or that each entity is the <u>alter-ego</u> or the other, or that Patriot owns the proprietary information, trade secrets and customers of CWI. Plaintiffs aver only that, "CWI is an <u>indirect subsidiary</u> of Patriot." (Doc. 1, ¶ 11, emphasis added).

## C.    <u>Allegations Regarding the "Confidentiality and Non- Compete Agreement"</u>

Chief among plaintiffs' allegations are those relating to the Agreement attached to the Complaint as <u>Exhibit A</u>. Plaintiffs allege:

> On or about July 24, 2015, Van Cleave executed a Confidentiality and Non-Compete Agreement (the "Agreement") <u>with, *inter alia,* Patriot Services</u> for and on behalf of Patriot Services' parent, subsidiary and affiliated entities. <u>*See* Ex. A</u>."

(Doc. 1, ¶ 16, emphasis added). The referenced "*inter alia*" entities are specifically

named in the <u>Exhibit A</u> "<u>Agreement</u>," which shows the contract was entered into between:

> .... Paul Van Cleave ("Employee") and Patriot National Insurance Group, Inc. and its **affiliated companies:** *Contego Service Group, LLC, Patriot Services, Inc., and TriGen Holdings Group, LLC. (referred to collectively as "Company" or "Patriot")* on behalf of and for the benefit of its parent, subsidiary and affiliated entities, their predecessors, successors and/or their assigns.

 (Doc. 1, Exhibit A, p. 1, emphasis added). CWI and other "subsidiary and affiliated entities" are not included within the definition of "<u>Company</u>" or "<u>Patriot</u>" (hereinafter "Patriot"); the contract, however, does provide: "This Agreement shall ... inure to the benefit of the Company's ... subsidiary and otherwise affiliated entities as express third-party beneficiaries *of the rights and protections afforded the Company under this Agreement.* (*Id.,* Ex. A, p. 4, ¶13, emphasis added). As shown below, the "rights and protections" of the Agreement address, exclusively, Patriot's "Business" of "***selling***, ***marketing***, *and* ***underwriting* workers' compensation insurance products**; the Agreement does not address the performance of "**third party administrator services**," or the providing of "**essential administrative services** including *collecting premiums and **remitting payments for insurance products***." (Doc. 1, ¶ 11, emphasis added).

After naming the contracting parties, the Agreement specifically identifies the "Business" that is the subject of the parties' contract, stating in its initial paragraph:

> WHEREAS Employee acknowledges and agrees that Patriot is engaged in a highly competitive business of selling, marketing, and underwriting workers' compensation insurance products on a nationwide basis (collectively "Business") * * * NOW, THEREFORE ... the parties agree

9

as follows ...

(Doc.1, Ex. A, p.1,  emphasis added). Immediately thereafter, the Agreement sets forth

14 numbered  paragraphs, including those for <u>Confidentiality, Non-Competition, and</u>

<u>Non-Solicitation</u> – all of which specifically reference these protections in relation to

Patriot's "Business." (*See* Doc. 1, Ex. A, pp. 1- 4). The Agreement provides it "shall be

governed exclusively by the laws of the State of Florida." (*Id.,* Ex. A, p.3, ¶ 9).

Despite the Agreement's specific application to the "Business" of  Patriot, and

the Agreement's protections provided *for that "Business"* – to Patriot and its subsidiary

and affiliated entities –  plaintiffs' Complaint assert's Van Cleave's Agreement *with*

*Patriot* is an Agreement *with CWI*, for the protection of an entirely different business.

(*See* Doc. 1, ¶¶ 11, 25-33, 41-43, 68-76, 77-81).

## IV.    <u>LAW AND ARGUMENT</u>

### A.    <u>Motion to Dismiss Standards</u>

#### (1)    <u>Rule 8(a)(2)</u>

As explained in *In re Amcad Holdings, LLC,* 579  B.R. 33, 37 (Bankr. D.Del.
2017):

> Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a
> complaint contain "a short and plain statement of the claim showing that
> the pleader is entitled to relief." <u>Fed. R. Civ. P. 8(a)(2)</u>. The statement
> must provide "the defendant fair notice of what the plaintiff's claim is
> and the grounds upon which it rests." *Conley v. Gibson,* 335 U.S. 41, 45,
> 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).(Emphasis added).

#### (2)    <u>Rule 12(b)(6) [Made Applicable as per Bankruptcy Rule</u>
   <u>7012(b)]</u>

As also  stated in *In re Amcad Holdings, LLC, supra,* at 37-38*:*

> A Rule 12(b)(6) motion challenges the sufficiency of the factual allegations in the complaint. ... To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashchroft v. Iqbal,* 556 U.S. 662, 678 129 S.Ct. 1937, 173 L.Ed.2d 868 (2007).

The *Amcad Holdings* Court further noted the three-part analysis used in weighing a motion to dismiss:

> First, the Court must take note of the elements needed for a plaintiff to state a claim. ... Second, the Court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pled facts as true and disregarding any legal conclusions. ... Third, the Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. ...

(*Id.,* at 38).  Lastly, in consideration of a F.R.B.P. 7012 Motion to Dismiss, this court may take judicial notice of the confirmed Chapter 11 Plan in the main bankruptcy case. See *In re Petrowax P.A.,Inc.* 200 B.R. 538 (Bkrtcy. D. Del. 1996) and *In re General Media, Inc.*, 335 B.R. 66 (Bkrtcy S.D.N.Y. 2005).

### B.    Plaintiffs' Claims For Stay Violations and Turnover Should Be Dismissed.

Plaintiffs' Complaint merely contains conclusory allegations that defendants "willfully violated the automatic stay" (*see* Doc. 1, ¶¶ 46-47), without pleading a key factual component of the willful violation of stay claim, i.e.,  that of notice that the stay is in effect.  IMA and Van Cleave are non-creditors and non-parties in interest to

11

plaintiffs' bankruptcy cases.  The Complaint does not allege IMA and Van Cleave were

listed as parties to receive notice of the instant bankruptcy proceedings, nor does the

Complaint allege defendants were otherwise given notice of the bankruptcy proceedings,

or that defendants had cause to investigate whether a bankruptcy case had been filed by

plaintiffs.

Courts have termed violations of the automatic stay of 11 U.S.C. §362 where the

defendant had no notice of the stay to be merely "technical" violations of the automatic

stay and that no claim for damages lies for such technical violations.  *In re Kline*, 424

B.R. 516 (Bkrtcy. D. N.M. 2010).  In *Kline*, the debtor sued the defendants for violations

of the automatic stay by commencing proceedings against the debtor in a state court

regarding a landlord-tenant dispute after the debtor filed for bankruptcy.  The court

ultimately found that the violation of the automatic stay was not actionable given that the

defendants did not have notice of the bankruptcy filing.  The court said:

> Neither Ms. Calder nor Ms. Tiedemann, both pro se, were included in
> Ms. Kline's bankruptcy schedules or other the mailing list of the
> bankruptcy case, and neither had notice or knowledge of the Chapter 13
> case when they commenced the State Court Action or served process.
> Nor were their any facts present that should have caused them to make
> further inquiry as to whether Ms. Kline was a debtor in a bankruptcy case.
> Ms. Calder's and Ms. Tiedemann's violation of the stay by
> commencement of the State Court Action and service of process was a
> technical violation for which no damages are warranted.

(*Id.*, at 523-524).

The *Kline* court dismissed on summary judgment the plaintiff's claims for willful

violation of the automatic stay.  The plaintiff in a complaint based on violations of the

12

automatic stay must state a plausible claim for relief to survive a motion to dismiss, including that the defendants have notice of the bankruptcy proceedings.  See *In re Davis*, 498 B.R. 64, 67-69 (Bkrtcy. D. S.C.  2013). In the case of IMA and Van Cleave, the Complaint is insufficient to plead a cause of action for damages for willful violation of the automatic stay given there is no allegation IMA and Van Cleave had notice or even an inkling of plaintiffs' bankruptcy proceedings.

Plaintiffs also seek injunctive relief, prohibiting defendants' alleged further violations of the automatic stay.  (*See* Doc. 1, "Prayer for Relief," p. 22, subparagraph b). However, given that plaintiffs' Chapter 11 Plans have now been confirmed, the automatic stay is no longer in effect.

Subject to subsections (d), (e), (f), and (h), subsection (c)(1) of Title 11 § 362 states, "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." (11 U.S.C.A. § 362). "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." (11 U.S.C.A. § 1141).  In the case at bar, the Debtor's plan vests all assets of the estates in either the Reorganized Debtors or a Litigation Trust. (*See* Document 702, Case No. 18-10189, Article V, Paragraph B, page 22, and Paragraph L, page 27).  Clearly, there are no longer any remaining estate assets in plaintiffs' bankruptcy cases.

13

The general rule vests the property of the estate in the debtor. When the property is no longer the estate's, the stay is discontinued. *See In re Reisher*, 149 B.R. 372, 373 (Bankr. M.D. Penn. 1992)("it is a steadfast principle of bankruptcy law that the automatic stay terminates on confirmation of a Chapter 11 plan."); *In re Fortner Oilfield Services, Inc.*, 49 B.R. 9, 11 (Bankr. N.D. Tex. 1984)(holding that the "automatic stay terminated upon confirmation); *In re Resorts International, Inc.*, 372 F. 3d 154, 156; 165 (3d Cir. 2004)(holding that the confirmation of the plan terminates the estate)."Unless otherwise provided in the plan or the order confirming the plan, confirmation discharges the debtor from any debt that arose before the date of confirmation. (11 U.S.C. § 1141(d)(1)(A)). Discharge . . . renders the automatic stay ineffective under Section 362(c)(2)(C) of the Bankruptcy Code." *In re Nardulli & Sons Co., Inc.*, 66 B.R. 871, 875-76 (Bankr. W.D. Penn. 1986).

Given that the automatic stay in plaintiffs' bankruptcy cases has terminated by virtue of Plan confirmation, an injunction enforcing the non-existent automatic stay is not proper.  Given that plaintiffs' Complaint does not state a cause of action for damages for willful violation of the automatic stay nor for continuing injunctive relief to enforce the now non-existent stay, Count I of the plaintiffs' Complaint should be dismissed.

Likewise, Count II of the Complaint, which requests  turnover of property of the estate, should also be dismissed. As noted above, any property that was previously property of the estate is now vested in either the Reorganized Debtors or the Litigation

Trust.  In a turnover action, the property sought to be turned over must be property of the estate. *In re Bolton*, 466 B.R. 831, 67 (Bankr. S.D. Miss. 2012); *In re Amcast Indus. Corp.*, 365 B.R. 91, (Bankr. S.D. Ohio 2007); *In re Wagers*, 340 B.R. 391 (Bankr. D. Kan. 2006), *rev'd on other grounds*, 355 B.R. 268 (B.A.P. 10th Cir. 2006); *In re Builders Transport, Inc.*, 471 F.3d 1178 (11th Cir. 2006). Section 542(a) further clarifies that the property must be property that the trustee may use, sell, or lease under 11 U.S.C.A. § 363, or that the debtor may exempt under 11 U.S.C.A. § 522. *In re Bolton*, *supra*,  and *In re Bailey*, 380 B.R. 486 (B.A.P. 6th Cir. 2008).  Lastly, because confirmation of a Chapter 11 Plan generally terminates the estate, courts have held that actions for turnover do not survive plan confirmation.  See *In re Western Integrated Networks*, 329 B.R. 334, 340-341 (Bkrtcy. D. Colo. 2005) citing *In re Diagnostic Intern., Inc.*, 257 B.R. 511, 515 (Bkrtcy. D. Ariz. 2000).

Given the lack of allegations regarding IMA and Van Cleave having any notice for purposes of a willful violation of the automatic stay, and the fact of the confirmation of plaintiffs' Chapter 11 Plan, both Counts I and II of the instant Complaint should be dismissed.

    **C.**    **CWI's "Breach of Contract Claim" Against Van Cleave  Should be Dismissed**.

    **(1)**    **CWI's allegations show no breach of the contract in dispute.**

As noted above, the Confidentiality and Non-Compete Agreement ("Agreement") provides trade secrets/confidential information and non-competition protection for the

"highly competitive business of selling, marketing, and underwriting workers'
compensation insurance products on a nationwide basis (collectively 'Business')," and
is to be governed exclusively by Florida law.  (Doc. 1, Ex. A, p.1, and p. 3, ¶ 9,
emphasis added).

In *Kelly v. Balboa Insurance Company,* No. 8:11-cv- 450-T-35-MAP, 2014 WL
12621241 (M.D. Fla. March 31, 2014), the Court said:

> Under Florida law, a third party may bring an action to enforce the terms
> of a contract though that party is not named in the contract, *if that
> contract creates a right or imposes a duty in favor of that third party.
> Crabtree v. Aetna Cas. And Surety Co.,* 438 So.2d 102, 105 (Fla. 1st DCA
> 1983) ... "A third party beneficiary's rights of action on the promise [of
> the contract] cannot, however, rise higher than the rights of the
> contracting party through whom he claims." *Id.*

(*Id.,* at *2, bracketed material by the Court, emphasis added). Also, as recognized in
*Comprehensive Care Corp. v. Katzman,* No. 8:09 -cv- 01375-T-24-TBM, 2010 WL
3190136, *8 (M.D. Fla. July 30, 2010), *"*[t]he third-party beneficiaries stand in the shoes
of the original parties, for better or worse."Based on the specific wording of the
Agreement, *Patriot* could not assert *trade secrets/confidential information and non-
competition protections* as to any "Business" other than the workers' compensation
"Business" specified in the parties' contract; to the extent CWI had a workers'
compensation "Business," CWI could assert protections for that "Business" as a third-
party beneficiary of Van Cleave's Agreement with Patriot. Standing "in the shoes" of
Patriot, CWI cannot enforce rights greater than those expressly granted to protect the
"highly competitive business of selling, marketing, and underwriting workers'

compensation insurance products." *Katzman, supra.* The workers' compensation "Business" is not mentioned in the body of the Complaint, which alleges *only* purported harm to CWI's "third party administrator services" business of providing "essential administrative services including collecting premiums and remitting payments for insurance products." (Doc. 1, ¶11; *see* purported "harm" allegations to CWI's business, ¶¶ 12-135). The words "workers' compensation insurance products" do not appear in the body of the Complaint; the phrase "selling, marketing, and underwriting" does not appear in the body of the Complaint; there are no allegations relating in any manner to "workers' compensation insurance products," or the "selling, marketing, and underwriting" of such products. The <u>Agreement</u> does not address or purport to protect any information – or provide for non-competition – relating to CWI's business of "*administrative services*" or "*collecting premiums and remitting payments for insurance products*." CWI's allegations, therefore, do not state any claim <u>relating to the "Business"</u> specifically described in the Agreement; CWI does not allege harm to the "Business" specifically described as the subject of protections provided by the Agreement. CWI's allegations do not show any breach of the actual Agreement alleged as the basis of CWI's <u>Breach of Contract Claim</u>. (*See* statement of Claim, Doc. 1, ¶¶ 68-76). CWI has therefore failed to state a claim upon which relief can be granted. Although CWI specifically alleges breach of the Agreement, the *allegations*, contrasted with the actual wording of the <u>Exhibit A Agreement</u>, fail to show a *plausible* basis for relief under *Iqbal* or *Twombly, supra; see also, Bank of Utah v. Teterboro R.A.M.S., LLC* , No. 14 -cv- 00060,

2014 WL 2434201 (D.N.J., May 29, 2014), where the defendant's counterclaim for, *inter alia,* breach of contract, was dismissed, when the counterclaimant's allegations conflicted with the counterclaim's Exhibit A "Program Documents" submitted in opposition to a motion to dismiss the counterclaim. (*Id.,* at *2-*3). In granting the dismissal motion, the Court said:

> In light of the conflicting facts laid out in Defendant's Counterclaim Complaint and Exhibit A, and highlighted by Defendant in its briefing, this Court finds that Defendant's counterclaims do not contain sufficient factual matter showing that "the pleader is entitled to relief." *Iqbal,* 556 U.S. at 678. ... The facts asserted in Defendant's counterclaim contradict facts in Exhibit A, which is integral to its Counterclaim Complaint, and the Complaint thereby fails to contain a statement of the claim showing that it is entitled to relief from Plaintiff, Bank of Utah, as opposed to LW Air Owners. ...

(*Id.,* at *3, emphasis added). CWI's Complaint allegations conflict with the wording of the Agreement which is integral to CWI's claims; CWI therefore shows no entitlement to relief. *Iqbal, supra*].

### D.    CWI's "Tortious Interference With Contract" Claim Against IMA Should be Dismissed.

#### (1)    CWI's allegations show no interference with the subject matter of the Agreement.

As set forth above, the Agreement at issue provides protection for the "Business" of "selling, marketing, and underwriting workers' compensation insurance products." IMA is alleged to be, "like CWI ... a provider of third party administrator services .... IMA is a direct competitor of CWI." (Doc. 1, ¶ 39, emphasis added).

CWI is not alleged to be in the business of *selling, marketing, and underwriting*

*workers' compensation insurance products.*

IMA is not alleged to be in the business of *selling, marketing, and underwriting workers' compensation insurance products.*

IMA is not alleged to have undertaken any acts involving *workers' compensation insurance products.*

Van Cleave, who is a party to the Agreement (Doc. 1, Ex. A, p. 1), is not alleged to have undertaken any acts involving *selling, marketing, and underwriting workers' compensation insurance products.*

Van Cleave is not alleged to have breached any contract obligation relating to *selling, marketing, and underwriting workers' compensation insurance products.*

CWI does not allege IMA interfered with Van Cleave's contract obligations relating to the "Business" specifically identified in the Agreement, *i.e.*, *selling, marketing, and underwriting workers' compensation insurance products.*

Because the Complaint alleges no "interference" with the "Business" specifically identified in the Agreement at issue, CWI has failed to state a claim against IMA for Tortious Interference With Contract. (*See* statement of Claim, Doc. 1, ¶¶ 77-81). Further, CWI's tortious interference claim is based on the following conclusory allegations:

> "IMA knew or should have known that Van Cleave had entered the Agreement with CWI" (Doc. 1, ¶ 78, emphasis added); "IMA has procured Van Cleave's breach of the Agreement intentionally and without justification" (*Id.*, ¶ 79, emphasis added); "As a result of the fomentation of contractual breaches, CWI has suffered, and will continue to suffer, irreparable harm." (*Id.*, ¶ 80).

19

These assertions do not meet the pleading requirements of *Twombly.* In finding

similar allegations inadequate, the Court in *In re Uni-Marts, LLC,* 404 B.R. 767, 787

(Bankr.D.Del. 2009) said:

> The plaintiff alleges that Sahakian "*knew or should have known that the profit and loss information provided by the Debtor concerning the Store was materially incomplete, false, and misleading*" and that the Plaintiff would rely to its detriment on the Debtor's misrepresentations. ... Further, the Plaintiff's Complaint alleges that "Sahakian ... provided substantial assistance to the Debtor and others." ... Accordingly, the Plaintiff argues that it has properly pled a claim under the Restatement (Second) of Torts, section 876(b), which requires both knowledge of the other actor's breach of duty and substantial assistance or encouragement.
>
> *The Plaintiff, however, provides no factual allegations to support this conclusory statement. "Twombly requires that a complaint contain more than just conclusory reiterations of the statutory basis for a claim. The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim*." *Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.),* 2008 WL 4239120, at *4 (Bankr.D.Del. 2008). Accordingly, the Court finds that the Plaintiff has failed to state a claim under section 876 (b).
>
> The Plaintiff also alleges that Sahakian acted tortiously "pursuant to a common plan" which it argues states a claim under section 876(a). ... Once again, however, the Compliant fails to contain any supporting facts beyond this conclusory allegation. Under *Twombly*, without more, the Plaintiff fails to state a claim.
>
> Therefore, the Court concludes that the Complaint contains insufficient factual allegations, with respect to Sahakian, to state a claim for concerted tortious activity under either section 876(a) or (b) ... As a result, Sahakian's motion to dismiss Count II on this basis will be granted.

(*Id.,* at 787, 788, emphasis added). The same is true with regard to CWI's insufficient,

conclusory assertions, which are devoid of alleged facts to support them. CWI's

20

baseless, unexplained claim should therefore be dismissed.

### E.    CWI'S "Florida Uniform Trade Secrets Act" Claim Should be Dismissed

CWI alleges it is a <u>Delaware</u> corporation, with a principal place of business in Greenville, <u>South Carolina</u>. (Doc. 1, ¶ 7). Patriot is alleged to be a <u>Delaware</u> limited liability company, with a principal place of business in Fort Lauderdale, <u>Florida.</u> (*Id.,* ¶ 8). IMA is alleged to be a <u>Louisiana</u> corporation, with a principal place of business in Bossier City, <u>Louisiana</u>. (*Id.,* ¶ 9).  Van Cleave is alleged to be a resident and citizen of <u>Louisiana</u>. (*Id.,* ¶ 10). The Complaint specifically alleges Van Cleave was employed by <u>CWI</u>; the Complaint does not allege Van Cleave was employed by <u>Patriot</u>. (*See* Doc. 1*,* ¶¶ 15-24). The Complaint contains  no allegation  that any acts of IMA, Van Cleave, CWI or Patriot occurred in Florida; nor does the Complaint allege facts relating to any tortious acts  even remotely related  to the State of Florida. Although the <u>Agreement</u> purports to be governed by Florida law, CWI's claim under the  <u>Florida Uniform</u> <u>Trade Secrets Act ("FUTSA</u>") (*see* statement of Claim, Doc. 1, ¶¶ 95-107), is an independent statutory  claim,  and  not  a  contract  action;  <u>Section 688.008(2)</u>(a) of the FUTSA specifically  provides, "[t]his act does not affect ... Contractual remedies, whether or not based upon misappropriation  of a trade secret."  Moreover, the Agreement does not apply to CWI's business of performing "essential administrative services," including  its business of "collecting premiums and remitting payments for insurance products." The Complaint does not  allege facts showing any purported  misappropriation of <u>Patriot's</u>

confidential information (so as to implicate Florida law); instead, the Complaint avers

<u>CWI's</u> trade secrets and confidential information were taken. (*See* Doc. 1, ¶¶ 11-135).

Without allegations showing Florida law is applicable to the facts alleged by CWI, CWI

has no claim upon which relief can be granted under Florida law. Pertinent to this point

is *Howard v. Kerzner International Limited,* No. 12-2218, 2014 WL 714787 (S.C. Fla.

Feb. 24, 2014), where  the Court refused to apply Florida statutes to a tort claim arising

in the Bahamas (*Id.,* at \*1, \*5). As stated by the Court:

> Plaintiff cites <u>Florida Statute § 672.313</u> as providing a cause of action for
> Breach of Express Warranty ... However, Florida law cannot be applied
> extraterritorially unless the statute contains an "express intention that its
> provisions are to be given extraterritorial effect." *Burns v. Rozen,* 201
> So.2d 629, 630 (Fla. 1st DCA 1967); *see also Southeastern Fisheries
> Ass'n, Inc. v. Dep't of Natural Res.,* 435 So.2d 1351, 1355 (Fla. 1984)
> (declining to extend law extraterritorially absent express intent of the
> legislature to do so.". Neither of these particular statutes express the
> intent that these statutes apply extraterritorially ans such intent should not
> be inferred. *See United States v. Berdeal,* 595 F.Supp.2d 1326, 1329-30
> (S.D. Fla. 2009). ...

(*Id.,* at \*5, additional case cites omitted). While the FUTSA [F.S.A. §§ 688.001- 688-

009] "shall be applied and construed to effectuate its general purpose to make uniform

the law  with respect to the subject of this act among states enacting it" (F.S.A. §

688.009), the Act reflects no intent that its own specific  provisions are to be given

extraterritorial effect.  Nor would any "conflict of law" considerations allow application

of Florida  law to the facts alleged by CWI. *See Howard, supra,* at \*2- \*4). CWI's claim

under the FUTSA  should therefore be dismissed.

22

### F.    All Claims of Patriot  Should be Dismissed

The Agreement at issue addresses *Patriot's "Business*," which, as noted above, is the "highly competitive business of selling, marketing, and underwriting workers' compensation insurance products on an nationwide basis." As also  noted above, the Complaint does not allege Van Cleave was employed by Patriot, nor does it contain specific factual averments explaining how *Patriot's "Business*" was harmed by Van Cleave or IMA. No allegations of the Complaint allege the  breach of any obligation relating to workers' compensation insurance products. The allegations of plaintiffs' Complaint instead relate to *the business of CWI*, alleged to be the  performance of "essential administrative services including collecting premiums and remitting payments for insurance products." (Doc. 1, ¶ 11). All allegations in the "Factual Background" of the Complaint (Doc. 1. ¶¶ 11-43) relate *exclusively*  to CWI's business, CWI's  alleged contract and other  rights, CWI's  trade secrets, CWI's  confidential information, CWI's customers, and CWI's competition with IMA. Nowhere in these allegations is there any reference to Patriot's business,  Patriot's contract rights, Patriot's  trade secrets, Patriot's confidential information, or Patriot's customers; nor is there any allegation that  Patriot competes with  IMA. Patriot instead alleges *only* that "CWI is an indirect subsidiary of Patriot Services, LLC." (Doc. 1, ¶ 11). Patriot does not allege it is asserting  rights of CWI, and such an undertaking would be superfluous in any event. The Complaint, however, does contain multiple vague, unexplained and  conclusory references to purported harm to "plaintiffs" and/or violations of "plaintiffs' rights," which are

23

insufficient under *Twombly and Iqbal , supra*. Plaintiffs' above referenced allegations, and all subsequent allegations of <u>Count I</u> through <u>Count X111</u> (Doc. 1, ¶¶ 43-135), assert only factual assertions relating to purported violations of CWI's claimed rights. Thus, Patriot has failed to state any claim upon which relief may be granted against Van Cleave or IMA. Accordingly, all claims of Patriot should be dismissed.

## IV.    <u>CONCLUSION</u>

The above discussed allegations state no claims upon which relief can be granted. Defendants respectfully ask the Court to dismiss CWI's claims for Breach of Contract (Doc. 1, ¶¶ 68-76), Tortious Interference With Contract (*Id.,* ¶¶ 77-81), and Misappropriation of Trade Secrets Under the Florida Uniform Trade Secrets Act (*Id.,* ¶¶ 95-107). Defendants further ask the Court to dismiss each and every one of the 13 claims asserted by Patriot (*Id.,* Counts I - XIII, ¶¶ 44-135).

Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF, LLP**

BY:    */s/ Jennifer R. Hoover*
Jennifer R. Hoover (DE Bar No. 5111)
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
*E-Mail: jhoover@beneschlaw.com*

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

BY:    */s/ Steven M. Oxenhandler*
        Steven M. Oxenhandler, T.A. (Bar Roll #28405)
        Bradley L. Drell (Bar Roll #24357)
        Michael J. O'Shee (Bar Roll #10268)
        Martha R. Crenshaw (Bar Roll #27420)
        P.O. Box 6118
        Alexandria, Louisiana 71307-6118
        Telephone: 318-445-6471
        Facsimile: 318-445-6476
        *E-Mail:* soxenhandler@goldweems.com
        *E-Mail:* bdrell@goldweems.com
        *E-Mail:* moshee@goldweems.com
        *E-Mail:* mcrenshaw@goldweems.com
**ATTORNEYS FOR  IMA, INC. AND PAUL VAN CLEAVE**

**CERTIFICATE OF SERVICE**

I, Jennifer R. Hoover, hereby certify that on this 29th  day of May, 2018, a copy of the foregoing document was electronically filed by CM/ECF, and I caused copies to be served via U.S. Mail on the following parties:

Laura Davis Jones
James E. O'Neill
Peter J. Keane
*Pachulski Stang Ziehl & Jones LLP*
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)

Kathryn A. Coleman
Christopher Gartman
Jacob Gartman
*Hughes Hubbard & Reed LLP*
One Battery Park Plaza
New York, NY 10004-1482

_s/Jennifer R. Hoover_
OF COUNSEL

26