## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **PATRIOT NATIONAL INC.,** *et al.,*[1] | Case No. 18-10189 (KG) |
| Debtors. | (Jointly Administered) |
| **CWIBENEFITS, INC. and PATRIOT SERVICES, LLC,** | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 18-50415 (KG) |
| **PAUL VAN CLEAVE and IMA, INC.,** | |
| Defendants. | |

### PLAINTIFFS' MEMORANDUM OF LAW IN
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Kathryn A. Coleman
Christopher Gartman
Erin E. Diers
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
          chris.gartman@hugheshubbard.com
          erin.diers@hugheshubbard.com

June 26, 2018

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
          joneill@pszjlaw.com
          pkeane@pszjlaw.com

*Attorneys for Plaintiffs*

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are:  Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826).  The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND .......................................................................................2

NATURE AND STAGE OF PROCEEDING ...............................................................3

ARGUMENT ................................................................................................................4

I.    Standard of Review.....................................................................................4

II.    The Defendants Cannot Satisfy the Rigorous Standard Required to Obtain Dismissal of a Complaint. ..............................................................5

    A.    Count I and Count II:  Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362 and Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542. .......................................5

    B.    Count IV:  Breach of Contract Claim Against Van Cleave. ........................7

    C.    Count V:  Tortious Interference Against IMA.............................................8

    D.    Count VII: Florida Uniform Trade Secrets Act. ........................................10

    E.    All Claims Asserted By Patriot Services. ..................................................10

III.    Alternatively, Plaintiffs Should Be Granted Leave to File an Amended Complaint. ...............................................................................11

CONCLUSION...........................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advice Interactive Grp., LLC v. Web.com Grp., Inc.*, No. 3:17-CV-801-J-39MCR, 2017 WL 6554409 (M.D. Fla. Oct. 20, 2017) ...........................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................4

*Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929 (3d Cir. 1984) .....................................11

*Chartis Warrantyguard, Inc. v. Nat'l Elecs. Warranty, LLC*, No. CIV.A. 5764-VCP, 2011 WL 336385 (Del. Ch. Jan. 28, 2011) ...............................................10

*In re Conex Holdings, LLC*, 518 B.R. 792 (Bankr. D. Del. 2014) ..................................12

*De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 113 F. Supp. 3d 1221 (M.D. Fla. 2014) .........................................................................................................7

*In re Diagnostic Int'l, Inc.*, 257 B.R. 511 (Bankr. D. Ariz. 2000)....................................7

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)................................................4

*Gillead v. Hertz Corp.*, No. CIV. A. 89-2070, 1990 WL 119390 (D.N.J. Aug. 14, 1990) ........................................................................................................................12

*Gross v. German Found. Indus. Initiative*, 549 F.3d 605 (3d Cir. 2008) ........................4

*Kinard v. Crosby*, 315 S.C. 237 (1993) ............................................................................8

*Kiser v. General Elec. Corp.*, 831 F.2d 423 (3d Cir. 1987)............................................12

*Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.)*, 977 F.2d 826 (3d Cir. 1992) .............................................................................5

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175 (Del. 2015) ........10, 11

*In re O.P.M. Leasing Servs., Inc.*, 21 B.R. 993 (Bankr. S.D.N.Y. 1982) ......................11

*Official Comm. of Unsecured Creditors of Jevic Holding Corp. v. The CIT Grp./Bus. Credit, Inc. (In re Jevic Holding Corp.)*, 2011 WL 4345204 (Bankr. D. Del. Sept. 15, 2011) (BLS) .............................................................................. 4-5

*Pers. Watercraft Prod. SARL v. Robinson*, No. 16-62972-CIV, 2017 WL 5665341 (S.D. Fla. Sept. 22, 2017).........................................................................................9

ii

### TABLE OF AUTHORITIES – Cont'd.

**Page(s)**

*In re Pitt Penn Holding Co.*, 484 B.R. 25 (Bankr. D. Del. 2012) (BLS)......................................4, 5

*In re Seven Fields Dev. Corp.*, 505 F.3d 237 (3d Cir. 2007)...........................................7

*In re Spong*, 661 F.2d 6 (2d Cir. 1981)........................................................10

*In re Univ. Med. Ctr.*, 973 F.2d 1065 (3d Cir. 1992)........................................5

*In re W. Integrated Networks, LLC*, 329 B.R. 334 (Bankr. D. Colo. 2005) ...................7

*Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395 (4th Cir. 2006).................................6

**Statutes and Rules**

11 U.S.C. § 362........................................................................5, 6, 7

11 U.S.C. § 362(a)(3)..................................................................5, 7

11 U.S.C. § 362(k)......................................................................5, 7

11 U.S.C. § 362(k)(1)...................................................................5

11 U.S.C. § 363..........................................................................6

11 U.S.C. § 542........................................................................5, 6, 7

11 U.S.C. § 542(a)......................................................................6, 7

11 U.S.C. § 1123(b)(3)(B)...............................................................7

Fed. R. Bankr. P. 7015.................................................................11

Fed. R. Civ. P. 12(b)(6)................................................................4, 5

Fed. R. Civ. P. 12(c)...................................................................12

Fed. R. Civ. P. 15(a)(2)...............................................................11

Florida Uniform Trade Secrets Act.....................................................1, 9

DOCS_DE:220078.1 69353/002

CWIBenefits, Inc. ("<u>CWI</u>") and Patriot Services, LLC *f/k/a* Patriot Services, Inc. ("<u>Patriot Services</u>" and, together with CWI, "<u>Plaintiffs</u>"), debtors in possession in the above-captioned jointly administered chapter 11 cases and the plaintiffs herein, by and through their attorneys, hereby submit this response (the "<u>Response</u>") to the motion filed by Defendants IMA, Inc. ("<u>IMA</u>") and Paul Van Cleave ("<u>Van Cleave</u>" and, together with IMA, "<u>Defendants</u>") seeking dismissal of the Complaint (Adv. Pro. Docket No. 12) (the "<u>Motion</u>").

## PRELIMINARY STATEMENT

1.      Defendants planned to, and succeeded in, taking Plaintiff CWI's largest customer, depriving the Plaintiffs of millions of dollars in annual revenue.  Defendants effectuated their scheme by violating (or procuring the violation of) the terms of Defendant Van Cleave's confidentiality and non-competition agreement, including obligations to maintain the confidentiality of certain proprietary and trade secret information and to not compete with his former employer for a limited period of time following the termination of his employment. Defendants now seek to escape liability for these substantial harms they caused Plaintiffs to suffer.

2.      However, the Motion fails to provide any basis to dismiss Plaintiffs' claims.  The Motion's argument that there has been no breach of Van Cleave's agreement is premised on the false premise that the agreement imposes restrictions only with respect to the business of selling, marketing, and underwriting workers' compensation insurance products.  The remainder of the arguments advanced in the Motion rely on misunderstandings or misapplications of applicable law.  Contrary to Defendants' contentions, (i) Plaintiffs' stay violation and turnover claims will still be viable following the effective date of the Debtors' joint chapter 11 plan, which has not occurred yet, (ii) the presumption against extraterritoriality has no application to the Florida Uniform Trade Secrets Act claim because the instant proceeding is

focused entirely on conduct within the United States, and (iii) a contract counterparty has standing to be a plaintiff in a suit alleging breach of obligations to an affiliated third party beneficiary.

3.     Affording Plaintiffs the benefit of every favorable inference arising out of their allegations—as is required for purposes of the Motion—results in one conclusion: Plaintiffs' claims are sufficient to withstand dismissal.  Accordingly, and for the reasons more fully explained below, Defendants' Motion should be denied.

## FACTUAL BACKGROUND

4.     CWI provides custom-tailored, high-quality third party administrator services, including benefits administration, data management, and billing services to employers, health plans, and benefits administrators.  (Compl. ¶ 11.)  CWI's business depends on its ability to maintain strong relationships with its customers.  (Compl. ¶¶ 12-13.)  CWI relies on its highly-trained employees to nurture and manage these relationships effectively and in the best interests of the business.  (*See* Compl. ¶¶ 12-13.)

5.     Van Cleave was a valued and trusted employee of CWI until August 2017. (Compl. ¶ 35; *see also* Compl. ¶¶ 22-23.)   Prior to his resignation and termination of his employment, Van Cleave was an implementation account manager and then a Benefits Sales Executive.  (Compl. ¶ 18.)  In the former role, he was responsible for CWI's relationship with its largest customer, Benefits in a Card ("BIC").  (Compl. ¶¶ 19-20.)

6.     On or about July 24, 2015, Van Cleave executed a Confidentiality and Non-Compete Agreement (the "Agreement") with, among others, Patriot Services for and on behalf of Patriot Services' parent, subsidiary and affiliated entities.  (*See* Compl. ¶ 16 & Ex. A.) Van Cleave agreed in the Agreement, among other things, that he had "acquired or [would] acquire knowledge of trade secrets and other confidential information of the Company," and that

2

he would not "not misappropriate, use for any purpose, or disclose, any trade secrets or other confidential information of the Company[.]" (Compl. ¶ 27 & Ex. A, § 1.)  He further agreed that, for a period of twelve months following termination of his employment, he would not "on [his] own behalf or on behalf of any other person, . . . corporation, or other entity, . . . be employed in any capacity by, any business that engages in business that is similar or otherwise competitive with the Company's Business or otherwise competes or is preparing to compete with the Company."  (Compl. ¶ 28 & Ex. A, § 2.)  He also agreed that he would not "directly, indirectly or in concert with others, . . . engage in the purchase or sale of insurance products or related services to, any customer or supplier/vendor who was a customer or supplier/vendor of the Company within the two years immediately preceding the termination of Employee's employment with the Company."  (Compl. ¶ 29 & Ex. A, § 3.)

7.    In violation of his contractual, fiduciary, and other legal obligations, prior to the termination of his employment with the Plaintiffs, Van Cleave accepted employment with IMA, a direct competitor of CWI.  (Compl. ¶¶ 35-39).  Using Van Cleave's knowledge of CWI's relationship with BIC, IMA secured BIC's business and deprived CWI of its largest client and millions of dollars in annual revenue.  (Compl. ¶¶ 2, 40.)  Defendants were able to do so because, as a high-level employee of CWI, Van Cleave was privy to CWI's valuable trade secrets and proprietary and confidential information, including detailed knowledge about CWI's customers and their contract terms, pricing, technology work flows, and preferences.  (*See* Compl. ¶¶ 22-24, 40-42.)

## NATURE AND STAGE OF PROCEEDING

8.    On January 30, 2018 (the "Petition Date"), Patriot National, Inc. and certain of its affiliates, including CWI and Patriot Services (collectively, the "Debtors")

3

commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

9.     On April 27, 2018, Plaintiffs commenced the above-captioned adversary proceeding against Defendants, asserting thirteen causes of action (the "Complaint").  (*See* Adv. Pro. Docket No. 1.)

10.     On May 4, 2018, this Court entered its Findings of Fact, Conclusions of Law, and Order Confirming Fourth Further Amended Joint Chapter 11 Plan of Reorganization (Ch. 11 Docket No. 705), confirming the Debtors' Fourth Further Amended Joint Chapter 11 Plan of Reorganization (the "Chapter 11 Plan").  (Ch. 11 Docket No. 704.)

11.     On May 29, 2018, Defendants filed the Motion (Adv. Pro. Docket No. 12) and an answer (Adv. Pro. Docket No. 13).

## ARGUMENT

### I.     Standard of Review.

12.     In considering a motion to dismiss a complaint pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff.  *Gross v. German Found. Indus. Initiative*, 549 F.3d 605, 610 (3d Cir. 2008).  A motion to dismiss must be denied where, as here, the complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In making such a determination, the court must "accept all factual allegations [in the complaint] as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

4

13.     Accordingly, a plaintiff "gets the benefit of the doubt" with respect to the factual allegations in its complaint in connection with a motion to dismiss. *In re Pitt Penn Holding Co.*, 484 B.R. 25, 34 (Bankr. D. Del. 2012) (BLS); *Official Comm. of Unsecured Creditors of Jevic Holding Corp. v. The CIT Grp./Bus. Credit, Inc. (In re Jevic Holding Corp.)*, 2011 WL 4345204, at *3 (Bankr. D. Del. Sept. 15, 2011) (BLS) (denying motion to dismiss fraudulent transfer claim and holding that "credibility of the facts alleged by the plaintiff are not at issue in a motion to dismiss because 'Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'"). The relevant inquiry is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Pitt Penn*, 484 B.R. at 35.

## II.     The Defendants Cannot Satisfy the Rigorous Standard Required to Obtain Dismissal of a Complaint.

14.     The Complaint contains thirteen viable causes of action against the Defendants. The allegations set forth in the Complaint, accepted as set forth in the Complaint, are sufficient to support each of the causes of action. Thus, the Motion should be denied.

## A.     Count I and Count II: Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362 and Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542.

15.     The Complaint asserts viable claims for violation of the automatic stay and turnover. Pursuant to section 362(a)(3) of the Bankruptcy Code, the commencement of the Chapter 11 Cases triggered a global stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 362(k) subjects willful violators of the automatic stay to liability for "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, . . . punitive damages." 11 U.S.C. § 362(k)(1). Violations of the automatic stay are willful where "a creditor violates the stay with knowledge that the bankruptcy petition has been filed." *Lansdale Family*

5

*Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992) (citing *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1087-88 (3d Cir. 1992)). Furthermore, section 542 of the Bankruptcy Code provides that "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property . . . ." 11 U.S.C. § 542(a).

16.     Here, Plaintiffs alleged that the Defendants willfully interfered with Plaintiffs' property, including the misappropriated confidential, proprietary, and trade secret information and Plaintiffs' contractual rights under the Agreement. The Defendants incorrectly argue that the Complaint does not allege notice of the automatic stay; however, the Complaint specifically pleaded that the violations of the automatic stay were willful. (Compl. ¶¶ 46-47.) Additionally, public filings show that Van Cleave was provided with notice of commencement of the Chapter 11 Cases. (Ch. 11 Docket No. 116, Ex. B, at p. 28 of 134.) *Cf. Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) (courts may take judicial notice of items filed on court docket in adjudicating a motion to dismiss).

17.     Furthermore, Defendants' arguments that the section 362 and 542 causes of action have been mooted by confirmation of the Plaintiffs' Chapter 11 Plan are both factually and legally incorrect. First, as a factual matter, the Chapter 11 Plan has been confirmed but is not yet effective; as of the date hereof the Effective Date[2] of the Chapter 11 Plan has not yet occurred and thus the Chapter 11 Debtors' property has not yet vested in the Reorganized Debtors or the Litigation Trust (as applicable). Second, as a legal matter, the Plaintiffs' damages on account of prior conduct by the Defendants will still exist and provide a basis for recovery

---

2.   All capitalized terms in this paragraph that are not defined elsewhere herein have the meaning ascribed to them in the Chapter 11 Plan.

6

after the Effective Date.  Pursuant to the Chapter 11 Plan, following the Effective Date, all Causes of Action (including under section 542) will be retained and pursued by the Litigation Trust pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  (Ch. 11 Docket No. 702, Art. V.L.)[3]

18.    Therefore, Plaintiffs have adequately pled—and may maintain—plausible claims for willful violation of the automatic stay pursuant to section 362(a)(3) and 362(k) and for turnover pursuant to section 542(a).  As a result, Count I and Count II of the Complaint should not be dismissed.

**B.    Count IV:  Breach of Contract Claim Against Van Cleave.**

19.    To plead a breach of contract cause of action under Florida law, the moving party must establish that (1) there was a valid contract, (2) there was a material breach of the contract, and (3) damages ensued.  *See Advice Interactive Grp., LLC v. Web.com Grp., Inc.*, No. 3:17-CV-801-J-39MCR, 2017 WL 6554409, at *8 (M.D. Fla. Oct. 20, 2017) (citing *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 113 F. Supp. 3d 1221, 1223 (M.D. Fla. 2014)).

20.    Defendants assert that the Complaint does not adequately plead the "breach" element on the basis that the Agreement purportedly obligates Van Cleave to protect information or refrain from competing with the Plaintiffs *only* with respect to the business of

---

3.    The Motion does not appear to assert an objection to this Court's post-confirmation retention of jurisdiction over this adversary proceeding (as opposed to authority to assert the section 362 and 542 claims).  However, to the extent that certain cases cited by the Defendants stand for the proposition that this Court's jurisdiction shrinks following confirmation of the Chapter 11 Plan, jurisdiction over the instant adversary proceeding is properly assessed as of the (pre-confirmation) commencement of this adversary proceeding.  *See In re Seven Fields Dev. Corp.*, 505 F.3d 237, 265 (3d Cir. 2007) ("[T]he *Pacor* test applies in all disputes raised pre-confirmation and the 'close nexus' test applies in all disputes raised post-confirmation . . . .").  The cases cited by Defendants do not hold otherwise.  *See, e.g.*, *In re W. Integrated Networks, LLC*, 329 B.R. 334 (Bankr. D. Colo. 2005) (dismissing adversary proceeding commenced post-confirmation); *In re Diagnostic Int'l, Inc.*, 257 B.R. 511 (Bankr. D. Ariz. 2000) (same).

selling, marketing, and underwriting workers' compensation insurance products (*i.e.*, the defined term "Business" in the Agreement).  (Mot. at 17.)

21.     This argument fails because it ignores the plain text of the Agreement. The obligations in the Agreement are significantly broader than described in the Motion.  The Agreement prohibits Van Cleave from "us[ing] for any purpose, or disclos[ing]" the company's "trade secrets or other confidential information."  (Compl. Ex. A, § 1.)  Those obligations are not limited to the selling, marketing, and underwriting of workers' compensation insurance products. The Agreement then provides a list of company information that must be kept confidential, including (but not limited to) customer information, the terms of contracts, and specialized training and information provided to employees.  (Compl. Ex. A, § 1.)  Similarly, Van Cleave's non-competition obligations are not limited to the selling, marketing, and underwriting of workers' compensation insurance products; the Agreement prohibits Van Cleave from (among other things) working "indirectly or in concert with others" to "engage in the purchase or sale of insurance products or related services" to former current and former customers (Compl., Ex. A, § 3) or from being employed in a business that competes with the Company.  (Compl., Ex. A, § 2.)

22.     Accordingly, the Complaint adequately pleaded that Van Cleave has breached his obligations under the Agreement by misusing trade secrets, confidential, and proprietary information  and by working with IMA, including for purposes of soliciting and doing business with Plaintiffs' customers, including BIC.

## C.     Count V:  Tortious Interference Against IMA.

23.     A claim for tortious interference with contract under South Carolina law requires the following elements: "(1) a contract; (2) the wrongdoer's knowledge thereof; (3) his

intentional procurement of its breach; (4) the absence of justification; and (5) the damage resulting therefrom." *Kinard v. Crosby*, 315 S.C. 237, 240 (1993).

24.     Plaintiffs have sufficiently pled a claim for tortious interference with contract.  First, Defendants do not dispute that there was a contract: the Agreement.  Second, Plaintiffs allege that IMA knew or should have known that there was a confidentiality and non-competition agreement.  (*See* Compl. ¶ 78.)  Van Cleave's position of trust and responsibility at CWI should have indicated to IMA that there was an agreement.  Moreover, pursuant to section 14 of the Agreement, Van Cleave agreed to "communicate the terms of this Agreement to any person, firm, association, or corporation that he/she intends to be employed by, associate with, or represent in a business which involves the Business or directly or indirectly competes with the Company's business."  (Compl. Ex. A, § 14.)  Accordingly, Plaintiffs have alleged sufficient information to lead to an inference that IMA knew or should have known about the existence of the Agreement.  CWI should not be expected to provide further information about IMA's knowledge without the benefit of any discovery.  *See Pers. Watercraft Prod. SARL v. Robinson*, No. 16-62972-CIV, 2017 WL 5665341, at *4 (S.D. Fla. Sept. 22, 2017) ("[T]he amended complaint raises a reasonable expectation that discovery will reveal evidence corroborating the claim, and Personal Watercraft is afforded the benefit of discovery to support its claim . . . .").  Accordingly, the actions that IMA took in inducing Van Cleave to breach his obligations under the Agreement amounted to intentional interference without justification.

25.     Finally, Defendants' assertion that IMA cannot be liable because Van Cleave's contractual breaches were not related to "selling, marketing, and underwriting workers' compensation insurance products" (Mot. at 19) was discussed in the prior section with respect to the breach of contract claim against Van Cleave.

9

**D.      Count VII: Florida Uniform Trade Secrets Act.**

26.     The Motion's argument that the Florida Uniform Trade Secrets Act ("<u>FUTSA</u>") does not apply extraterritorially (Mot. at 22), is irrelevant to this case.  Plaintiffs do not seek to apply FUTSA to conduct in a foreign country, and therefore the extraterritoriality case law cited by the Defendants is inapposite.  Rather, the Complaint concerns actions taken by current residents of Louisiana that have caused harm to two Delaware corporations which are based in South Carolina and Florida, respectively.[4]

**E.      All Claims Asserted By Patriot Services.**

27.     The Complaint asserts all of the causes of action therein on behalf of both CWI and Patriot Services.  Defendants contend, in essence, that all of the claims asserted by Patriot Services should be dismissed because Van Cleave was employed by CWI and Defendants' misconduct directly harmed CWI's business, rather than Patriot Services' business.  (*See* Mot. at 23 ("[T]he Complaint does not allege Van Cleave was employed by Patriot [Services] . . . .  Patriot instead alleges *only* that 'CWI is an indirect subsidiary of Patriot Services, LLC.'").)

28.     Notably, Defendants provide no authority for the proposition that Patriot Services—a counterparty to the Agreement which Van Cleave has breached and with which IMA has tortiously interfered—lacks standing to enforce the contractual and property rights described in the Complaint.  In fact, contract counterparties have standing to enforce promises

---

4.  Defendants' Motion does not include an analysis of conflict of law principles except for a single conclusory assertion that no "'conflict of law' considerations allow application of Florida law to the facts alleged by CWI." (Mot. at 22.)  The Defendants also provide no basis for believing that the application of other states' tort law would make a substantive difference.  The Plaintiffs therefore do not believe that it is necessary to take a position as to the application of Delaware's conflict of law rules at this time.  However, the Agreement contains a Florida choice of law provision (Compl., Ex. A, § 9), which may provide a basis for the application of Florida law to other related tort claims.  *Cf. Chartis Warrantyguard, Inc. v. Nat'l Elecs. Warranty, LLC*, No. CIV.A. 5764-VCP, 2011 WL 336385, at *9 n.56 (Del. Ch. Jan. 28, 2011) (applying New York law to trade secret claims due to New York choice of law provision in agreement, notwithstanding defendant's argument that conflict of law analysis required application of other states' tort laws).

10

contained in valid agreements, including promises made for the benefit of third party beneficiaries. *See NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 176 (Del. 2015) (holding that contract counterparty could proceed directly against breaching party notwithstanding that direct injury occurred to affiliated third party beneficiary); *In re Spong*, 661 F.2d 6, 10 (2d Cir. 1981) ("In a third party beneficiary contract, benefits flow to both the promisee and the third party, and either may sue to enforce the contract."); *In re O.P.M. Leasing Servs., Inc.*, 21 B.R. 993, 1005 (Bankr. S.D.N.Y. 1982) ("[I]t is well-settled that a promisee as well as a contract's third party beneficiary may sue the promisor to enforce the contract.").

29.     As described in the Complaint, Patriot Services is party to a valid, binding agreement with Van Cleave, which, according to its express terms, was entered into on behalf of and for the benefit of Patriot Services' subsidiary and affiliated companies. CWI is an affiliate and indirect subsidiary of Patriot Services and therefore a beneficiary of the Agreement. Accordingly, Patriot Services is a promisee with respect to the obligations in the Agreement, and CWI is—according to the Defendants (Mot. at 16)—an express third party beneficiary of certain of those obligations, and both may pursue the claims in the Complaint. *See NAF Holdings*, 118 A.3d at 176 ("'[A] promisee-plaintiff [may] bring a direct suit against the promisor for damages suffered by the plaintiff resulting from the promisor's breach, notwithstanding that (i) the third-party beneficiary of the contract is a corporation in which the promisee-plaintiff owns stock; and (ii) the promisee-plaintiff's loss derives indirectly from the loss suffered by the third-party beneficiary corporation.'").

## III.    Alternatively, Plaintiffs Should Be Granted Leave to File an Amended Complaint.

30.     To the extent that the Court finds that Plaintiffs have not adequately pled any cause of action, Plaintiffs should be granted leave to amend the Complaint. Federal Rule of

11

Civil Procedure 15(a)(2), as incorporated by Federal Rule of Bankruptcy Procedure 7015, provides that a party may amend its complaint with leave of the court and that "[t]he court should freely give leave [to amend] when justice so requires.  Fed. R. Civ. P. 15(a)(2).  As the Third Circuit has recognized, there is a "general presumption in favor of allowing a party to amend pleadings." *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984).  Indeed, "great liberality in allowing amendment of an initial pleading is often appropriate, especially when an amendment will further the ends of justice, effectuate presentation of a suit's merits and not prejudice the opposing party." *Kiser v. General Elec. Corp.*, 831 F.2d 423, 427 (3d Cir. 1987) (citation omitted).

31.     Here, if the Court finds that more factual detail is required to support Plaintiffs' claims, Plaintiffs should be granted leave to amend the Complaint.  *See In re Conex Holdings, LLC*, 518 B.R. 792, 809 (Bankr. D. Del. 2014) (allowing Trustee to replead where "Court concludes that more factual detail is needed or the claims are insufficient in some manner."); *see also Gillead v. Hertz Corp.*, No. CIV. A. 89-2070, 1990 WL 119390, at *7 (D.N.J. Aug. 14, 1990) (allowing leave to re-plead after dismissing claims on Rule 12(c) motion).

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court enter an order

denying the Motion in its entirety.

Dated: June 26, 2018                    PACHULSKI STANG ZIEHL & JONES LLP
       Wilmington, Delaware

*/s/ Peter J. Keane*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email:  ljones@pszjlaw.com
       joneill@pszjlaw.com
       pkeane@pszjlaw.com

  -and-

Kathryn A. Coleman
Christopher Gartman
Erin E. Diers
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
      chris.gartman@hugheshubbard.com
      erin.diers@hugheshubbard.com

*Counsel for Plaintiffs*

13