## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*<br><br>**PATRIOT NATIONAL, INC.,** *et al.,*[1]<br><br>**Debtors;** | Chapter 11<br><br>Case No. 18-10189 (KG)<br><br>(Jointly Administered) |
| **CWIBENEFITS, INC. and PATRIOT SERVICES, LLC,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**PAUL VAN CLEAVE and IMA, INC.,**<br><br>**Defendants** | Adv. Proc. No. 18-50415 (KG) |

## REPLY MEMORANDUM ON BEHALF OF DEFENDANTS IN RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Jennifer R. Hoover
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP**
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
*E- Mail: jhoover@beneschlaw.com*

Steven M. Oxenhandler, T.A.
Bradley L. Drell
Michael J. O'Shee
Martha R. Crenshaw
**GOLD, WEEMS, BRUSER, SUES & RUNDELL**
P.O. Box 6118
Alexandria, Louisiana 71307-6118
Telephone: 318-445-6471 Facsimile: 318-445-6476
*E-Mail: soxenhandler@goldweems.com*
*E-Mail: bdrell@goldweems.com*
*E-Mail: moshee@goldweems.com*
*E-Mail: mcrenshaw@goldweems.com*

**July 13, 2018**                    *Attorneys for IMA, Inc. and Paul Van Cleave*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are:  Patriot National, Inc. (1376); Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc.(9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826).  The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

I.     PLAINTIFFS' BANKRUPTCY CLAIMS MUST BE DISMISSED. . . . . . . . . . . . . . . 1

II.    PLAINTIFFS  ESSENTIALLY  IGNORE  DEFENDANTS'  ARGUMENTS. . . . . . . . . . 3

       A.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       B.     Plaintiffs' Breach of Contract Claim Against Van Cleave Should be
              Dismissed.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       C.     CWI's Tortious Interference With Contract Claim Against IMA
              Should Be Dismissed.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       D.     Florida Uniform Trade Secrets Act Claim Should be Dismissed. . . . . . . . . . . . . 8

       E.     Dismissal is Warranted for all Claims of Patriot.. . . . . . . . . . . . . . . . . . . . . . . 10

       F.     Amendment of the Complaint is not Warranted. . . . . . . . . . . . . . . . . . . . . . . . . 12

III.   CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**PAGE**

## United States Statutes

11 U.S.C. §362.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

11 U.S.C. §542.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

## Federal Rules

Federal Rule of Bankruptcy Procedure 7012.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Civil Procedure 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## Cases

*Arriaga v. Fla. Pacific Farms, L.L.C.,* 305 F.3d 1288 (11th Cir. 2002).. . . . . . . . . . . . . . . . . . . . . 5

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). . . . . . . . . . . . . . . . 6, 8

*Burns v. Rozen,* 201 So.2d 629 (Fla. 1st DCA 1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Davis v. Abington Mem'l Hosp.,* 756 F.3d 236 (3d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dubrosky v. Colonial Life & Acc. Ins. Co.,* 129 Fed. Appx. 691 (3d Cir. 2005). . . . . . . . . . . . . . 8

*Essex Ins. Co. v. Miles,* No. 10-3598, 2010 WL 5069871 (E.D. Pa. Dec. 3, 2010).. . . . . . . . . . 7, 8

*Equity Lifestyle Properties, Inc. v. Florida Mowing And Landscape Service, Inc.,*
556 F.3d 1232 (11th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Friedheim v. Walter H. Hildic Co.,* 104 S.C. 378, 89 S.E. 358 (1916). . . . . . . . . . . . . . . . . . . . . 8

*Hamilton Constr. Co. v. Bd. of Pub. Instruction of Dade County,* 65 So.2d 729 (Fla. 1953). . . . . 5

*Howard v. Kerzner International Limited,* No. 12-2218, 2014 WL 714787,
(S.D. Fla. Feb. 24, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*In re Davis*, 498 B.R. 64 (Bkrtcy. D. S.C. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re O.P.M. Leasing Services, Inc.,* 21 B.R. 993 (Bankr. S.D.N.Y. 1982).. . . . . . . . . . . . . . . . . 12

*In re Spong,* 661 F.2d 6 (2$^d$ Cir. 1981).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Uni-Marts, LLC,* 404 B.R. 767 (Bankr. D.De. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. City of Shelby,* ... 135 S.Ct. 346, 347 ... (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jones v. St. Francis Catholic Hospital,* No. 17-1063, 2017 WL 5714002,
    (D. Del. Nov. 27, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lansdale Family Rests, Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.),*
    977 F.2d 826 (3rd Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.,* 118 A.3d 175 (Del. 2015). . . . . . . . . . . 11, 12

*Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pike v. Bruce Church, Inc.,* 397 U.S.; 90 S.Ct. 844 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Reynolds v. Stockman,* 109 S.C. 112, 95 S.E. 341 (1918). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Roberts v. Sarros,* 920 So.2d 193 (Fla. Dist.Ct. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Simmons v. State,* 944 So.2d 317 (Fla. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). . . . . . . . . . . . . . . . . . . . . . 6, 8

## Other Authorities

Black's Law Dictionary 588 (6th ed. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Florida Uniform Trade Secrets Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## Other References

NBC Television Show, The Office, "Money", 2007; clip viewable at:
    https://www.youtube.com/watch?v=EuZeff2y32M&index=2&list=RDEuZeff2y32M. . . 1

iv

Defendants IMA, Inc. ("IMA") and Paul Van Cleave ("Van Cleave") submit this Reply Memorandum in response to the Opposition filed by plaintiffs, CWIBenefits, Inc. ("CWI") and Patriot Services LLC ("Patriot"). For the reasons stated below, Defendants' Motion for Dismissal should be granted.

## I.        PLAINTIFFS' BANKRUPTCY CLAIMS MUST BE DISMISSED

As to Plaintiffs' claims under 11 U.S.C. §362 and §542, the issues are twofold on the Defendants' Motion to Dismiss.  The first issue is the level of specificity required to sufficiently plead a claim for willful violation of the automatic stay to survive a FRBP 7012(b) motion.  The second issue is whether an action to enforce the stay under §362 or for turnover of property under §542 is available to a reorganized Chapter 11 debtor after plan confirmation.  Each issue will be addressed in turn below.

The Plaintiffs' claims of a willful violation of the automatic stay remain insufficiently pled even in light of the opposition to the motion to dismiss.  The main thrust of Plaintiffs response to Defendants' arguments for dismissal is to say that the pleadings say the word "willful."   See Paragraph 16 of the Plaintiffs' Opposition to the Motion to Dismiss.  As noted in the case of *In re Davis*, 498 B.R. 64, 67-69 (Bkrtcy. D. S.C.  2013) (as referenced in the memorandum in support of the Defendants' Motion to Dismiss), mere conclusory allegations of a stay violation are insufficient to state a claim for a willful violation of the automatic stay.  You can't just say the word "willful" and expect anything to happen.[2]

---

[2]  "Oscar: Hey. I just wanted you to know that you can't just say the word "bankruptcy" and expect anything to happen. Michael Scott: I didn't say it. I declared it."  From the NBC Television Show, The Office, "Money", 2007; quote obtained from https://www.imdb.com/title/tt1031472/quotes .  A clip of this dialogue may be viewed here:   https://www.youtube.com/watch?v=EuZeff2y32M&index=2&list=RDEuZeff2y32M

As noted in the Plaintiffs' Memorandum, for a stay violation to be willful the defendant must have actual knowledge of the bankruptcy case.  Plaintiffs' Memorandum, pp 5-6, citing *Lansdale Family Rests, Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.)*, 977 F.2d 826, 829 (3rd Cir. 1992).  The Plaintiffs' Complaint does not allege that IMA had any knowledge of the Plaintiffs' bankruptcy cases, or how IMA might have received such knowledge.  Without those allegations, a claim for willful violation of the automatic stay does not lie against IMA.  As to the allegation that Van Cleve had notice of the bankruptcy and therefore willfully violated the automatic stay, the mailing matrix for the notice of the Plaintiffs' bankruptcy cases is inconsistent with the Plaintiffs' Complaint.  Ch. 11 Docket No. 116, at p. 28 of 134, lists Van Cleve with a South Carolina address, while paragraph 10 of the Complaint alleges that Van Cleve is a resident of Louisiana.  If Van Cleve is a resident of Louisiana, notice to an incorrect or perhaps former address of Van Cleve in South Carolina is insufficient to give Van Cleve actual knowledge of these bankruptcy proceedings.  On its face, the Complaint does not state a claim for a willful violation of the automatic stay by the Defendants, as there are no plausible allegations that the Defendants had any knowledge of the Plaintiffs' bankruptcy cases whatsoever.

Turning to the turnover and enforcement of the stay claims, Plaintiffs' arguments regarding the confirmed plan of reorganization not being effective are now incorrect, as notice of the plan effective date was filed at Docket No. 891 in the main bankruptcy case on July 2, 2018.  The automatic stay has therefore terminated and no cause lies for a court order to enforce the automatic stay which no longer exits.  Defendants reiterate the citations of authority in their memorandum in support of their motion to dismiss which remain unaddressed by the Plaintiffs.

The same logic and law applies to an action for turnover of property of the estate.  The

2

Plaintiffs attempt to revive their expired turnover action by stating that the turnover action "will be retained and pursued by the Litigation Trust pursuant to the confirmed Plan. See Ch. 11 Docket No. 702, Art. V.L." While it is true that all causes of action of the Debtors have been vested in a Litigation Trust, the Plaintiffs' Turnover action cannot be analyzed in a vacuum. The object of the instant Turnover Action is "Plaintiffs' trade secrets, confidential and proprietary information, and any other property of Plantiffs' estates..." See Plaintiffs' Complaint, subparagraph c of the Prayer for Relief. These assets have been vested into the reorganized Debtors by confirmation of the plan. See Ch. 11 Docket No. 702, Art. V. B. (2). Clearly, the Litigation Trust cannot maintain an action to recover property that does not belong to the Trust. In Defendants' memorandum in support of the instant Motion to Dismiss, ample authority has been cited that support the legal proposition that actions under section 542 of the Bankruptcy Code expire upon confirmation of a Chapter 11 plan. Here, the Plaintiffs' Plan has been confirmed and gone effective. An action for turnover of assets that were formerly property of the bankruptcy estate to a reorganized debtor is not contemplated by the Bankruptcy Code, and should therefore be dismissed for failure to state a claim.

## II.   **PLAINTIFFS ESSENTIALLY IGNORE DEFENDANTS' ARGUMENTS**

### A.   **Introduction**

The first sentence of plaintiffs' <u>Preliminary Statement</u> typifies the pleading deficiencies at issue herein. CWI and Patriot make the bare assertion that:

> Defendants planned to, and succeeded in, taking <u>Plaintiff CWI's largest customer</u>, <u>depriving the Plaintiffs of millions of dollars of annual revenue</u>.

(Opposition, p. 1, ¶ 1, emphasis added). Plaintiffs forget their own Complaint actually alleges, "[t]he business misappropriated by Van Cleave and IMA represents approximately $2.8 million in annual revenue <u>that has been misappropriated from CWI</u>." (Doc. 1, Complaint, ¶ 2, emphasis added).

*Nowhere* in the Opposition is there a citation to any <u>fact or facts</u> showing *how* the purported misappropriation of CWI's alleged business **deprives Patriot** of anything – let alone "millions of dollars of annual revenue."  The absence of any such alleged "facts" in the Complaint prompted, in part, the argument Patriot had failed to state a claim for relief, and all Patriot's claims should be dismissed.  Here, plaintiffs do not answer defendants' argument by reference to the Complaint, they merely *expand* the totally unsupported initial claim.  Throughout the Opposition, plaintiffs continue to ignore defendants' actual arguments, and instead essentially repeat their baseless, conclusory assertions.

### B. <u>Plaintiffs' Breach of Contract Claim Against Van Cleave Should be Dismissed</u>

As pointed out in defendant's <u>Memorandum in Support</u>: (1) the Van Cleave/***Patriot*** Agreement carefully identifies the contracting parties as Van Cleave, and four entities ("referred to collectively as 'Company' or 'Patriot' "), which <u>do not include</u> CWI; and (2) the "Business" of the "Company" is specifically identified in the Agreement as the "business of selling, marketing, and underwriting workers' compensation insurance products on a nationwide basis."  (*See* Doc, 1, Ex. A, at p. 1).  The Complaint fails to allege Van Cleave ever took any action that breached any obligation to the "Company" in relation to the Company's "Business," and therefore, the Complaint fails to allege facts showing any <u>breach by Van Cleave</u>.  Defendants argued, *inter alia,* CWI could – at most – benefit from the Agreement *only* to the extent the Agreement benefitted Patriot (as the "Company").  <u>Nothing</u> in the Agreement references any obligation in relation to CWI's business endeavors, or CWI's individual business practices. Plaintiffs do not address these specific arguments, but instead cite <u>Florida law</u> elements for a breach of contract claim, then argue the "plain text" of the Van Cleave/***Patriot*** Agreement supposedly shows "[t]he obligations in the Agreement are

significantly broader than described in the Motion." (Opposition, pp. 7-8, ¶¶ 20-21). Plaintiffs then

focus on prohibitions in the Agreement (*Id.,* ¶ 21), yet plaintiffs fail to note that all obligations and

prohibitions in the Agreement address *only* the Business defined in the Agreement, and obligate Van

Cleave *only* to the Company, in relation to the Business of the Company, *as that Business is defined*

*in the Agreement, i.e., "*selling, marketing, and underwriting workers' compensation insurance

products on a nationwide basis (collectively 'Business')." (*See* Doc. 1, Ex. A, at p. 1). Plaintiffs

reference the "plain language" of the Agreement, but completely avoid any discussion, mention of,

or reference to the exact words (in "plain language") placed at issue in defendants' Motion to

Dismiss. CWI and Patriot rely on Florida law, but fail to acknowledge that State's fundamental

contract principles. As explained in *Equity Lifestyle Properties, Inc. v. Florida Mowing And*

*Landscape Service, Inc.,* 556 F.3d 1232 (11th Cir. 2009):

> In interpreting a contract under Florida law, we "give effect to the plain language of
> contracts when that language is clear and unambiguous." *Arriaga v. Fla. Pacific*
> *Farms, L.L.C.,* 305 F.3d 1288, 1246 (11th Cir. 2002); *Hamilton Constr. Co. v. Bd. of*
> *Pub. Instruction of Dade County,* 65 So.2d 729, 731 (Fla. 1953). We must read the
> contract to give meaning to each and every word it contains, and we avoid treating
> a word as redundant or mere surplusage "if any meaning, reasonable and consistent
> with other parts, can be given to it." *Roberts v. Sarros,* 920 So.2d 193, 196 (Fla.
> Dist.Ct. App. 2006).

(*Id.,* at 1242, emphasis added). CWI and Patriot simply ignore critical definitions of the Agreement,

as if the words did not exist. Plaintiffs do not answer defendants' argument regarding the actual

contracting parties (which do not include CWI), or the "Business" of the "Company" (as defined in

the Agreement, and which does not include the third-party administrative services of CWI); instead,

plaintiffs, seek to obfuscate defendants' arguments through diversion. By focusing on prohibitions

of the Agreement, plaintiffs deflect from the object of the prohibitions, that is, Patriot's specifically

defined "Business" relating to workers' compensation insurance products. Plaintiffs conclude by

again asserting <u>conclusions</u> for which there are no alleged supporting *facts*:

> Accordingly, the Complaint adequately pleaded that Van Cleave has breached his obligations under the agreement by...working with IMA...for purposes of soliciting and <u>doing business with Plaintiffs' customers, including BIC</u>."

(Opposition, p. 8, ¶ 22, emphasis added).  Plaintiffs' Complaint, however, alleges BIC was CWI's customer, *not Patriot's:* "BIC was CWI's largest customer account, generating millions of dollars of annual revenue for CWI." (Doc. 1, ¶ 20).  Plaintiffs' conclusion is unexplained, and in any event, is contradicted by plaintiffs' own allegations.  Dismissal is warranted here.

### C.   <u>CWI's Tortious Interference With Contract Claim Against IMA Should Be Dismissed</u>

Plaintiffs recite the South Carolina "interference with contract" (tort) elements – then aver these elements have been met, thus supposedly negating defendants' dismissal argument. (Opposition, pp. 8-9, ¶¶ 23-25).  However, as stated in *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  In *Jones v. St. Francis Catholic Hospital,* No. 17-1063, 2017 WL 5714002, (D. Del. Nov. 27, 2017), it was further noted:

> "Though 'detailed factual allegations' are not required, <u>a complaint must do more than</u> simply provide 'labels and conclusions' <u>or 'a formulaic recitation of the elements of a cause of action.'</u>" *Davis v. Abington Mem'l Hosp.,* 756 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly,* 550 U.S. 544, 558, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  <u>In addition, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility.</u>  *See Johnson v. City of Shelby,*...135 S.Ct. 346, 347... (2014).

(*Id.,* at *2, emphasis added).  In the Opposition, plaintiffs reiterate their claim that IMA "knew or should have known" of Van Cleave's Agreement <u>*with Patriot*</u>, and utterly ignore the case law holding "knew or should have known" allegations are insufficient.  *See* Defendants' <u>Memorandum in Support</u>, at p. 20, quoting *In re Uni-Marts, LLC,* 404 B.R. 767, at 787, 788 (Bankr. D.De. 2009).

6

Plaintiffs suggest IMA's supposed "knowledge" of the Van Cleave Agreement *with Patriot* can be inferred, because, according to plaintiffs, Van Cleave was obligated to "communicate the terms of this Agreement to any...corporation that he...intends to be employed by...or represent in a business which involves **the Business** or directly or indirectly competes with **the Company's business**." (Opposition, p. 9, ¶ 24, emphasis added).  However, there is no explanation of *how* Van Cleave's supposed "obligation" translates to imputed knowledge of *anyone* employing Van Cleave, including IMA.  Plaintiffs fail to show where in their Complaint they allege facts demonstrating Van Cleave actually discussed his *Patriot* Agreement with IMA.  Also, plaintiffs again utterly and completely *ignore* the specific contract language identifying four entities (**that do not include CWI)** which are the "**Company**" – and again – plaintiffs' *ignore* the contract language that specifically defines the **Business** of the **Company** ("selling, marketing, and underwriting workers' compensation insurance products on a nationwide basis"), which has absolutely *nothing* to do with the business of IMA (third-party administration of medical insurance claims).  Despite plaintiffs' citation of a decision asserting "discovery will reveal evidence corroborating the claim" (Opposition, p. 9, ¶ 24), "discovery" cannot cure deficient pleadings.  As stated in *Essex Ins. Co. v. Miles,* No. 10-3598, 2010 WL 5069871 (E.D. Pa. Dec. 3, 2010), where the court addressed proposed "discovery" relating to an insufficient Complaint for piercing the corporate veil:

> While we acknowledge that it may be difficult without discovery for a plaintiff to plead this type of claim in light of *Twombly* and *Iqbal,* we must nonetheless reject Essex's request.  The Supreme Court precludes the use of even limited discovery to overcome a pleading insufficiency.  As the Court stated in *Iqbal,* Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 129 S.Ct. at 1950...

(*Id.,* at *3, emphasis added).  Regardless of what "discovery" could possibly show as to Van Cleave's statements – or lack thereof – to IMA regarding his prior employment, "discovery" will not

erase the contract language plaintiffs persistently and repeatedly ignore; "discovery" will not change

the definition of "**Company**" stated in the Van Cleave/***Patriot*** Agreement; "discovery" will not alter

the specific recitation of the **"Business"** of the **"Company"** as "selling, marketing, and underwriting

workers' compensation insurance products on a nationwide basis."  In citing South Carolina law on

"tortious interference with contract," plaintiffs overlook long established, bedrock South Carolina

law that, "in construing a contract, effect must be given to <u>every word and clause in it, if it can be

done consistently with a reasonable construction</u>." *Reynolds v. Stockman,* 109 S.C. 112, 95 S.E. 341,

342 (1918)(emphasis added); *see also Dubrosky v. Colonial Life & Acc. Ins. Co.,* 129 Fed. Appx.

691, 693 (3d Cir. 2005), citing South Carolina law for "<u>the cardinal principle that each term of a

contract should be given meaning so that no term is superfluous</u>.... *Friedheim v. Walter H. Hildic

Co.,* 104 S.C. 378, 89 S.E. 358, 359 (1916) ..." (emphasis added).  Plaintiffs ignore – and seek to

<u>render meaningless</u> – crucial language of the very contract they rely on for their baseless

"interference" assertions.  CWI and Patriot provide no valid reasons why their conclusory,

unsupported, implausible  "tortious interference with contract" claim should not be dismissed.

      **D.**     <u>**Florida Uniform Trade Secrets Act Claim Should be Dismissed**</u>

Defendants reiterate the arguments stated on page 20 of their <u>Memorandum in Support</u>,

which plaintiffs do not challenge.  Instead, CWI and Patriot address *only* the argument that Florida's

<u>statutory remedy</u> (*i.e.,* Uniform Trade Secrets Act) cannot be given <u>extraterritorial effect</u> (*i.e.,* outside

<u>the State of Florida</u>).  On this issue, plaintiffs offer the myopic and legally erroneous assertion that

"extraterritorial" refers <u>*only*</u> to assertion of Florida law "in a foreign country," which plaintiffs are

not seeking to do.  (Opposition, p. 10, ¶ 26).  As a fundamental matter, the term "extraterritorial"

means "beyond the physical and juridical boundaries of a <u>particular state or country</u>."  Black's Law

Dictionary 588 (6th ed. 1990)(emphasis added).  In *Simmons v. State,* 944 So.2d 317 (Fla. 2006), the

Florida Supreme Court addressed the <u>extraterritorial effect</u> of State laws outside the <u>boundaries of</u>

<u>a State, but within the United States</u>.

> Citing United States Supreme Court case law on this subject, the Florida Court said:
>
> The "critical inquiry" in such <u>extraterritorial effect</u> cases "is whether the practical
> effect of the regulation is to control conduct beyond the boundaries of the State."
> [*Pike v. Bruce Church, Inc.,* 397 U.S.].  Federal courts have also invalidated <u>state</u>
> <u>statutes</u> ... because the statutes potentially subject an area of interstate commerce...to
> inconsistent <u>state</u> regulations.

(*Id.,* at 330, emphasis added).  *Simmons* reflects the clear understanding that, contrary to plaintiffs'

argument, "extraterritorial" is not limited to application of State laws outside the continental

boundaries of the United States.  Defendants reiterate the arguments cited in *Howard v. Kerzner*

*International Limited,* No. 12-2218, 2014 WL 714787, *1, *5 (S.D. Fla. Feb. 24, 2014), and cases

cited therein (*see* <u>Memorandum in Support</u>, at p. 22).  Because the Florida Uniform Trade Secrets

Act does not contain the required "express intention that its provisions are to be given extraterritorial

effect" (*Burns v. Rozen,* 201 So.2d 629, 630 (Fla. 1st DCA 1967)), the Act cannot be applied outside

the State of Florida.

In a footnote, plaintiffs raise "choice of law" concerns, stating defendants made only one

"conclusory" assertion that choice of law considerations did not allow application of Florida law in

this matter.  (Opposition, p. 10, FN 4).  On the contrary, defendants cited *Howard v. Kerzner, supra*,

for their "choice of law" conclusion.  (Memorandum in Support, p. 22).  *Howard* cited, *inter alia,*

the following considerations under Florida conflicts law: "(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred; ( c) the domicile, residence, nationality,

place of incorporation and place of business of the  parties; and, (d) the place where the relationship,

9

if any, between the parties is centered." (*Howard,* at *3).  Plaintiffs' Complaint **does not show**:

(a) that any <u>injury occurred in Florida</u>;

(b) <u>that any conduct</u> allegedly causing injury <u>occurred in Florida</u>;

(c) that <u>CWI</u> [Delaware corporation with principal place of business in South Carolina], <u>IMA</u> [Louisiana corporation with principal place of business in Louisiana] and <u>Van Cleave</u> [resident and domiciliary of Louisiana] **have any connection whatsoever with Florida**, and that <u>only</u> Patriot [a Delaware corporation] claims to have its principal place of business in Florida [*see* Doc. 1, ¶¶7-10]; and

(d) that Florida is the <u>place where any "relationship" among the parties is "centered</u>."

Based on the allegations of plaintiffs' Complaint, Florida choice of law rules would *not* hold Florida law prevails here.  And, to the extent the <u>Van Cleave</u>*/**Patriot*** Agreement adopts Florida law, defendants note CWI is not a party to the contract, and Patriot has not <u>alleged facts showing its supposed Trade Secrets and Confidential Information</u> were  purportedly taken by either defendant; thus, Patriot has no claim under contract at issue, or the Florida Uniform Trade Secrets Act (as further addressed below).  For all these reasons, plaintiffs' claims under the Florida Uniform Trade Secrets Act should be dismissed.

### E.  <u>Dismissal is Warranted for all Claims of Patriot</u>

Defendants reiterate the arguments stated at pp. 23-24 of their <u>Memorandum in Support</u>. Plaintiffs' Complaint contains <u>contract and non-contract claims</u>.  However, plaintiffs allege only facts purporting to show harm to CWI.  Plaintiffs argue that Patriot, as "a counterparty to the Agreement" can "enforce the <u>contractual and property rights</u> described in the Complaint." (Opposition, p.10, ¶ 28, emphasis added).  But plaintiffs' argument does not address the fact that Patriot's <u>contractual and property rights</u> relate to <u>Patriot's property</u> (*i.e.,* confidential information relating to the "business of selling, marketing, and underwriting workers' compensation insurance

10

products on a nationwide basis." The "property rights" of the Van Cleave/***Patriot*** Agreement do not address CWI's property (*i.e.,* confidential information relating to third-party administrative services.) Plaintiffs allege no facts showing either defendant caused any harm whatsoever to Patriot. Plaintiffs' cited authority provides no support. The facts and issues of *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.,* 118 A.3d 175 (Del. 2015), are entirely different from those presented here. *NAF Holdings, LLC* involved a Holding Company plaintiff which sustained damages when two of its subsidiaries suffered harm due to the defendant's direct breach of its contract with the plaintiff. (*Id., at* 177). The two subsidiaries (which suffered harm) had been created by the plaintiff, and were wholly-owned by the plaintiff. (*Id.*). The actual issue was whether the Holding Company could sue in its own name, or whether it was required to sue derivatively on behalf of the subsidiaries. (*See Id., at* 176, "Certified Question Answered").

Rejecting the proposition that a derivative action was required, the Delaware Supreme Court relied on established contract law, stating, in pertinent part:

> It is a fundamental principle of contract law that the parties to a contract are bound by its terms, and have a corresponding right to enforce them.... It would be inconsistent with these legal principles to subject commercial parties to a burdensome demand excusal process before allowing them to sue on their own commercial contracts.

(*Id., at* 180-181). Unlike the plaintiff in *NAF Holdings, LLC,* Patriot is not alleged to be a Holding Company; Patriot is not alleged to have created CWI; Patriot is not alleged to wholly own CWI, and Patriot is not shown to have suffered any breach of its contract with Van Cleave relating to workers' compensation insurance products. Also, the plaintiff in *NAF Holdings LLC* alleged facts showing it suffered actual damages; Patriot alleges no facts showing it sustained any damages. Pertinent to this point is plaintiffs' own quotation from *NAF Holdings, LLC* (Opposition, p. 11, ¶29), where the

court said, in part: "a promisee-plaintiff [may] bring a direct suit against the promisor <u>for damages</u> <u>suffered by the plaintiff resulting from the promisor's breach</u> ..." (118 A.3d at 176, emphasis added). Patriot does not allege <u>sufficient facts</u> to bring its claim within the quoted language. *In re Spong,* 661 F.2d 6 (2d Cir. 1981), and *In re O.P.M. Leasing Services, Inc.,* 21 B.R. 993, 1005 (Bankr. S.D.N.Y. 1982), stand for the general proposition that a contracting party and a third-party beneficiary can both sue to enforce contract rights; however, this proposition is meaningless in the context of the instant case, where Patriot does not allege any facts showing any breach of its contract with Van Cleave, and Patriot alleges no facts showing any damage to Patriot as a result of purported acts involving CWI's third-party administrative services business. Patriot presents no arguments to show it has allege facts to sustain *any* of its claims asserted in this lawsuit.

### F.    Amendment of the Complaint is not Warranted

It is clear that, before dismissing a Complaint under <u>Fed. R. 12(b)(6)</u>, "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 236 (3d Cir. 2008). Here, the legal issues raised by defendants cannot be cured through amendment. As to the claims relating to the automatic stay and turnover, the fact that the Plaintiffs' Chapter 11 Plan has been confirmed and is now effective requires dismissal of the bankruptcy claims except for past willful violation of the automatic stay. However, as to the willful violation claim, the Plaintiffs' have not alleged that IMA had any knowledge of the Plaintiffs' bankruptcy or the stay and have not pointed to anything in their opposition of additional facts that could be pled as to IMA. The allegations of notice to Van Cleave who is alleged to be a Louisiana resident at a South Carolina address are clearly insufficient to state a claim for willful violation of the automatic stay, and no additional facts pled appear to be present that can resolve that

12

deficiency.  Nor can plaintiffs' contract-related claims be remedied by additional fact allegations; the contract problems at issue arise from the contract terms <u>ignored</u> by plaintiffs.  The "**Company**" definition cannot be amended to <u>include CWI</u> as a contracting party; the "**Business**" of the "**Company**" cannot be amended to expand its definition to include any business <u>other than</u> the "selling, marketing, and underwriting workers' compensation insurance products on a nationwide basis."  The lack of plausibility regarding plaintiffs "knew or should have known" assertions will not be aided by further conclusory claims; nor can Patriot insert "facts" to *transform* the claimed taking of CWI's confidential information regarding third-party administrative services *somehow into* a claimed taking of Patriot's confidential information relating to the selling, marketing and underwriting of workers' compensation insurance products.  Any amendment by plaintiffs would therefore be futile.  Accordingly, amendment should not be allowed.

## III.    <u>CONCLUSION</u>

Plaintiffs' Opposition ignores applicable law; it ignores critical facts relating the Van Cleave/ ***Patriot*** Agreement; it also fails to answer defendants' arguments.  For the reasons stated above, and in defendants' <u>Memorandum in Support</u>, defendants' <u>Motion for Dismissal</u> should be granted.

Respectfully submitted,

13

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP**

BY:     */s/ Jennifer R. Hoover*
        Jennifer R. Hoover (DE Bar No. 5111)
        222 Delaware Avenue, Suite 801
        Wilmington, Delaware 19801
        Telephone: (302) 442-7010
        Facsimile: (302) 442-7012
        *E-Mail: jhoover@beneschlaw.com*

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

BY:     */s/ Steven M. Oxenhandler*
        Steven M. Oxenhandler, T.A. (Bar Roll #28405)
        Bradley L. Drell (Bar Roll #24357)
        Michael J. O'Shee (Bar Roll #10268)
        Martha R. Crenshaw (Bar Roll #27420)
        P.O. Box 6118
        Alexandria, Louisiana 71307-6118
        Telephone: 318-445-6471
        Facsimile: 318-445-6476
        *E-Mail: soxenhandler@goldweems.com*
        *E-Mail: bdrell@goldweems.com*
        *E-Mail: moshee@goldweems.com*
        *E-Mail: mcrenshaw@goldweems.com*
**ATTORNEYS FOR  IMA, INC. AND PAUL VAN CLEAVE**

14

## CERTIFICATE OF SERVICE

I, Jennifer R. Hoover, hereby certify that on this 13th day of July, 2018, a copy of the foregoing document was electronically filed by CM/ECF, and I Caused copies to be served via U.S. Mail on the following parties:

Laura Davis Jones
James E. O'Neill
Peter J. Keane
*Pachulski Stang Ziehl & Jones LLP*
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)

Kathryn A. Coleman
Christopher Gartman
Jacob Gartman
*Hughes Hubbard & Reed LLP*
One Battery Park Plaza
New York, NY 10004-1482

*/s/ Jennifer R. Hoover*
OF COUNSEL

15